WILLIAM T. JOHNSON *v.* JESSIE L. BACON ET AL.

[45 South., 858.]

1. LIFE INSURANCE. *Ownership of policy. Assignments. Liability to insured's debts.*

A life insurance policy is the property of the beneficiary named therein and cannot be assigned or taken for the debts of the insured without the beneficiary's consent, although the insured paid the premiums when insolvent.

2. SAME. *Premiums. Creditors' rights. Insolvency.*

Premiums paid by an insolvent person for insurance on his life payable to another as beneficiary, may be recovered by the creditors of the insured after his death from the proceeds of the insurance in excess of the amount exempted by law from his debts, but they are not entitled to the excess of the insurance over the exempted amount.

FROM the chancery court of Leflore county.

HON. PERCY BELL, Chancellor.

Johnson, appellant, was complainant in the court below; Mrs. Bacon and others, appellees, were defendants there. From a decree on a demurrer to the bill in favor of, but not satisfactory to, complainant, he appealed to the supreme court.

The appellant, Johnson, began this suit in chancery against appellees, Mrs. Bacon and her children and two life insurance companies, charging that W. O. Bacon, the husband of appellee Mrs. Bacon, died, leaving insurance in force to the amount of $25,000; that of this amount $18,500 was payable to his wife as beneficiary, and $4,000 to his children as beneficiaries, and $2,500 to his estate; that during the latter part of the life of deceased both he and his wife were totally insolvent, and a large part of the insurance was taken out during the last year of his life, and that the premiums on all of his insurance had been paid during the latter part of his life with money advanced by the complainant, Johnson, for the purpose; that complainant had also become indorser for W. O. Bacon to the amount of several thousand dollars during the last few years of his life, and had been forced to pay the debts for which he become indorser; that there was an understanding between Bacon and complainant that complainant would be protected by the insurance policies on the life of Bacon; and that Mrs. Bacon knew of the advances made to her husband by complainant and of the understanding between them as to the insurance. The bill prayed that commissioners be appointed to ascertain the amount of the indebtedness due by Bacon to complainant, that the insurance companies be required to pay the proceeds of the policies into court, and that, after setting aside $10,000 of the insurance exempted by law to the beneficiaries, a decree be entered for the sum so found to be due complainant; such amount to be paid out of proceeds of the insurance policies in excess of $10,000. On the trial of the case the court below sustained a demurrer to and dismissed the bill, except as to the amount of premiums paid on the insurance policies by complainant, and allowed answer as to this part of the bill.

*McClurg, Gardner & Whittington,* for appellant.

In Colley's Brief on Insurance, Vol. IV, page 3795, we find the rule announced this way:

"All the statutes bearing on the exemption of life policies or their proceeds seem based on the theory that, in the absence of an expressed contrary intent, the object of an ordinary life in-surance policy should be considered as a protection of the as-sured's family after his death, and that this object and desire is laudable, and in accordance with public policy. They provide, in substance, that the proceeds of life insurance policies taken out for the benefit of certain classes of beneficiaries shall be free from the claim of creditors; but in some states insurance in excess of certain specified amounts, or procured while the in-sured was insolvent, is declared not exempt."

Under the text above quoted, the attention of the court is called to two points especially, to-wit: that in this case there was no "absence of an expressed contrary intent," but a specified agree-ment which the insured had with the benefactor, and that our statute, above quoted, limits the exception of charity to $10,000. The principle works itself out. The family of an in-solvent is provided for amply, and there is something left to con-fiding and deceived creditors—a very just and equitable con-struction. The demurrer confesses the allegations of the bill, and of the amended bill, that Bacon secured Johnson's credit, and money, upon assurances that his life policies protected him. And, more, the demurrer admits that Mrs. Bacon, also wholly insolvent, knew and consented to the fact that her husband was sustaining the family upon Johnson's faith in their assurances. In *Fearn* v. *Ward,* 2 South., 114, the supreme court of Ala-bama, upon a case like this held that: "A court of equity will in-tervene at the instance of a creditor, on averment and proof of a deficiency of legal assets, to subject to the satisfaction of his debt property fraudulently conveyed by a deceased debtor in his lifetime. *Battle* v. *Reid,* 68 Ala., 149; *Sharp* v. *Sharp,* 76 Ala., 312." And also:

"The procurement of the policy of insurance by Robert Fearn in favor of his child, and the payment of premiums with the funds, constituted a gift to her—a voluntary conveyance based on parental affection—which is void as to his existing creditors, though no fraud may have been intended. It is a voluntary provision, effected by converting to her benefit money which in equity and good conscience should have been paid to his creditors. Though the law regards the parental duty of maintenance, and the consequent duty of making provision for the future, when the father may no longer exercise protecting care, it subordinates the discharge of these duties to obligations to his creditors; and declares void, as to them, any voluntary appropriation of property not authorized by legally expressed exemptions or privileges generally allowed in considerations of public policy. The bond on which complainant's intestate was security had pre-existed, and was existing at the time of the creation and issue of the policy. The subsequent payment of the debt relates to the date of the suretyship, and constitutes the paying surety a creditor, who may avoid a fraudulent conveyance, though made during the period his claim was contingent. *Jenkins* v. *Lockard,* 66 Ala., 377; *Keel* v. *Larkin,* 72 Ala., 493. Whether complainant be regarded as a simple contract creditor, or his rights arise from the provisions of the statute by authority of which the judgment was assigned to him, he is entitled to avoid, as offending his rights, the policy of insurance, unless some superior or equal equity of the beneficiary supervenes."

We will not quote further, but respectfully invite a careful consideration of the case by this honorable court, especially at the botton of page 119, where the court said that the excess of insurance above the statutory exemption must be devoted to the payment of debts, on the ground that the statute fixed a limit beyond which the husband cannot pass.

We press upon the consideration of the court the point that this is not a claim for all of the insurance, but only for that part above the ten thousand dollars which our statute, in its charity,

leaves to the widow ánd children. We cannot believe that a court of equity, under the hard circumstances of this case will allow the benefactor to be robbed, because he had a tender heart for his kinsfolk. This is not a case against the insurance companies. They have confessed liability and paid the amount of the several policies into court. It is a contest by the man who paid the premiums, believing that he was protected, and upon the faith of which he lent and paid large sums of money and a suit against the beneficiaries who knew the facts. The allegations confessed by the several demurrers are: That Bacon, and his wife had no property, that he and his family lived in a rented house, and that it was a struggle for him to maintain his family, that he and his wife were without credit, and Johnson, who married Bacon's sister, was a man of means, and by reason of the intimate relations of the two families, Johnson gave Bacon credit to the amount of fifteen thousand dollars, upon Bacon's solemn promises that he was safe in his life policies, of which Mrs. Bacon knew. It is alleged, and confessed by the demurrer, that Mrs. Bacon, defendant here, "thoroughly understood" the business relations between her husband and his brother-in-law; that she understood firmly that Johnson was to be protected by the life policies and "would run no risk of the loss of a dollar advanced to him, or upon his credit." She knew that Johnson placed full faith in her husband's statements.

It was an equitable assignment of, at least, all beyond the ten thousand dollars exempted by the statute.

*Pollard & Hamner,* for appellees.

The wife and children had a vested right upon the issuance of the policies. In ordinary life insurance where no power of divestiture is reserved, the general doctrine prevails that the issuance of the policy conferred immediately a vested right upon, and raises an irrevocable trust in favor of, the party named as beneficiary, a right which no act of the insured can impair without the beneficiary's consent. 3 Am. & Eng. Enc. L., 980, and

numerous authorities cited in note.   May on Insurance 399 L.,
Bliss on Life Insurance (2d ed.), 517.

It is well settled that a policy payable to another than the
insured is not his property but belongs to person named as bene-
ficiary.   *Jones* v. *Patty,* 73 Miss., 179, 18 South., 794; *Bishop*
v. *Curphey,* 60 Miss., 22; *Cozine* v. *Grimes,* 76 Miss., 300, 24
South., 197; *Central Bank* v. *Hume,* 128 U. S., 195 (32 Law.
Ed., 375); *Bank* v. *Williams,* 77 Miss., 398, 26 South., 965.

The fact that Mrs. Bacon thoroughly understood that her
husband had agreed that Johnson was to be protected by insur-
ance in no way binds her to pay her husband's debts.   The bill
nowhere charges that she guaranteed that the insurance policies
already existed for the protection of Johnson or that she guar-
anteed that they would be so taken.   The bill is indefinite in its
charges.   At best it only charges that she knew that Bacon had
agreed to insure for Johnson's benefit and that she agreed that
he might do so.   She did not undertake to guarantee that it
would be done.   Bacon might have insured his life for Johnson's
benefit without his wife's knowledge or consent, and the fact that
"she understood firmly that Johnson was to be protected by life
insurance policies and would run no risk of the loss of a dollar
advanced by him or upon his credit" in no way binds her to give
up policies of insurance in her favor or in favor of the children.
The allegation as to when the promise of Bacon was made is in-
definite.   The fact is that all along he did have $2,500 for
the benefit of his creditors.   The creditor, Johnson, has only him-
self to blame for not seeing that Bacon did what he says that he
promised to do, and what he doubtless intended to do, but which
he put off until death came and it was then too late.   It is sim-
ply another case of loss by procrastination.

There is no charge in the bill that Mrs. Bacon individually was
ever a debtor directly or indirectly of Johnson and the attempt
in paragraph XI of the amended bill to charge her on a promise
as set forth in said paragraph after the death of her husband is
simply saying that she then agreed to pay the debts of her hus-

band and this promise, if made, would in order to be binding, have to be in writing. It is directly within the statute of frauds. Code 1906, § 4775 (a).

There is no law in this state limiting the amount which may be invested in premiums. Some states have such a law, but even then only the excess of premiums and interest thereon can be collected by creditors. "If the premiums exceed the statutory amount, the creditors have a right to subject an amount equal to the excess, with interest thereon, to their claims; but they have no right to the insurance purchased by the excess of the premiums; they are limited to the excess of premiums and interest thereon." 18 Cyc. 1436, E., and paragraph at top of page 1439, and authorities there cited.

*Alexander & Alexander* and *George B. Power,* on same side.

Johnson did not pay the premiums. He even prays for discovery as to when and what amounts Bacon paid. The distinct averment is made that "all the premiums and money paid for and on account of said insurance were paid by the said W. O. Bacon" and the bill says that "complainant is without information as to the amount paid by Bacon on the policies." How could it be a fraud by Bacon on his creditors if Johnson paid certain premiums? The theory as to the premiums is that Bacon paid them out of his own estate.

Of course the averment as to Mrs. Bacon's knowing about her husband's promise to take out insurance so that his creditors would be protected has no element of contract or estoppel in it. *Non constat*—that Bacon might have intended to take out some policies for Johnson and also some for his wife and children. It is not alleged that Mrs. Bacon knew any more than Johnson that these policies were in existence until after her husband's death. No charge is made that she was ever consulted in the matter. The policies were never, so far as it appears, in her possession. There was no delivery to Johnson, no writing, no definite promise as to any policy, any time, any amount.

Suppose Johnson, instead of indifference and nonaction, had

during Bacon's life proceeded to enforce the promise now sued upon; could he have done it? How does the promise become more binding, more enforceable, after his death than during his life? Johnson seems to have been willing for Bacon to take money out of his estate, when insolvent, to protect him as creditor, and leave other creditors unsecured. That would have been no fraud on the other creditors. But now since Bacon is dead and cannot explain his conduct Johnson is loud in charging that it was fraud to so use the few hundred dollars to buy insurance. It was open to Johnson and was perfectly legal and according to custom for himself to insure Bacon's life for his own benefit as a creditor. He cannot complain since he did not do so and did not seek to look after his own interest during Bacon's life. He cannot now complain when after Bacon's death he finds that Bacon, pursuant to a wise policy of the law and faithful to his duty, made some provisions for the widow and orphans left behind. "He that provideth not for his own is worse than an infidel."

*McWillie & Thompson,* for appellee, the Mutual Life Insurance Company of New York.

MAYES, J., delivered the opinion of the court.

Where a life insurance policy is taken out for the benefit of named beneficiaries, it vests in the beneficiaries the absolute ownership, and it cannot be assigned, transferred, deposited as collateral security, or made in any way liable for the debts of the insured without the consent of the beneficiary expressly given. If there be any attempt to assign, transfer, or in any way dispose of the proceeds of the policy by the insured, or any attempt to make same liable for his debts, and it is done without the consent and authority of the beneficiary expressly given, it is as void as if the insured undertook to dispose of property belonging to an entire stranger; and this is true, whether the premiums are paid by a solvent or insolvent insurer. *Jones* v. *Patty,* 73 Miss., 179, 18 South., 794; *Bishop* v. *Curphy,* 60 Miss., 23; *Cozine*

v. *Grimes,* 76 Miss., 300, 24 South., 197; *Central Bank* v. *Hume,* 128 U. S., 195, 9 Sup. Ct., 41, 32 L. Ed., 370; *Pence Adm'r* v. *Makepeace,* 65 Ind., 345; *Hendrie & Blotfoff Mfg. Co.* v. *Platt,* 13 Colo. App., 15, 56 Pac., 209; *Stigler's Ex'x* v. *Stigler,* 77 Va., 163; *Bank* v. *Williams,* 77 Miss., 398, 26 South., 965.

The further allegations of the bill in this case show that at the time of the death of the insured, W. O. Bacon, he had in force an aggregate insurance of $25,000 upon his life. $18,-500 of this insurance was made payable to the wife as beneficiary, and $4,000 was made payable to the children as beneficiaries. It is further alleged that at the time these policies were taken out, and up to the time of the death of the insured, both himself and his wife were insolvent, and all the premiums on account of the insurance were paid by Bacon with intent to hinder, delay, and defraud his creditors, and it is sought to subject these premiums to the payments of the debts due the creditors. It is contenedd on the part of appellees that the insurance in excess of the $10,000 exempt by law cannot be liable for any premiums paid, except for the premiums paid on the excess of the amount exempt. The law exempts proceeds of insurance policies to the amount of $10,000 payable to any special beneficiary. To this extent, and up to the amount of $10,000, the proceeds cannot be made liable for any debt, even for premiums paid by the insured while he was insolvent, and though paid with intent to hinder, delay, and defraud his creditors. This amount is made sacred and secure from the grasp of the law, and cannot be made liable in any way for any debt, except it be by consent of the beneficiaries. But, where an insurance policy is taken out for the benefit of a named beneficiary, the proceeds of the insurance policy are liable for the premiums paid by the insured in fraud of the creditor's rights and while he was insolvent, if the proceeds amount to more than the exemptions allowed. The sum in excess of the $10,000 ex-

empt by the statute is liable, not only for the premiums paid to keep up the policy on the excess, but it is also liable for the premiums paid by the insolvent debtor in order to maintain the policy for the amount that is exempt under the law. If an insolvent debtor dispose of his property in fraud of the rights of his creditors by procuring a life insurance policy, the proceeds of which are exempt by law, the proceeds of the policy cannot be subjected to the payment of the premium so long as the proceeds do not exceed the exemption law. The excess insurance is not alone liable for whatever premiums were paid in order to keep it up, but, not being protected by the statute, and not being exempt from liability for the premiums paid to maintain this entire insurance, is also liable for whatever premiums were paid in order to maintain the whole insurance, the exempt as well as the nonexempt. "The procurement of a policy of life insurance as a provision for the family of the assured in the event of his death, and the payment of premiums thereon by a person insolvent or of limited means, whose wife and family may be dependent upon him and his labor for the comforts and necessaries of life, are acts to be fostered and encouraged by the law. These acts are not hostile to, but in full accordance with, those provisions of the law which bear upon the rights and duties incident to the family relation. A necessary provision for his own household is a duty enjoined upon every man by divine as well as human law." Where creditors are deprived of property which they had a right to resort to for the collection of their debts, because the debtor uses property which they have a right to resort to in paying premiums on policies of insurance taken out for the benefit of those who have claims upon him, it is right that the proceeds of those policies in excess of the sum exempt by laws should be used to pay back to those creditors that sum which has been diverted from them in the payment of the premiums, if their claims are living claims at the time the proceeds are collected.

A demurrer to the bill having been sustained by the chancel-

lor, and the bill dismissed, except as to that part of the bill which seeks to recover the premiums, the decree is affirmed, and cause remanded to be proceeded with, in accordance with this opinion.

*Affirmed.*

Whitfield, C. J., took no part in the decision of this case.