## MUTUAL BENEFIT LIFE INSURANCE Co. *v.* ROBERTA WILLOUGHBY.

[54 South. 834.]

1. LIFE INSURANCE. *Disposition of policy. Beneficiary. Consent.*

The right of the beneficiary named in a life insurance policy to the
proceeds of the policy is absolute, that is to say, the rights to
the benefits under the policy during the life of the contract, cannot
be destroyed by the insured or disposed of, except with the consent
of the beneficiary, and this applies whether the policy be an ordi-
nary life policy or a policy to which is attached a loan value, cash
surrender value and automatic paid up insurance.

2. SAME.

Where the husband of the beneficiary in a policy procures a loan on
the policy without the beneficiary's knowledge or consent and
without ratification on her part, he is not her agent and she is
not estopped by his acts.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Suit by Mrs. Roberta Willoughby against the Mutual Benefit Life Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Cochran & McCants,* for appellant.

A life insurance policy is a mere chose in action, and may be pledged, transferred or assigned just as any other chose in action.

In *Lanier, Admr. v. Box, Admr.,* 64 L. R. A. 458, the terms of the policy were identical with the terms of the policy before the court, and the court said in that case, "we think upon the authorities, there can be no doubt of the absolute control of the insured over this policy to the extent, at least, of the contingent interest which he had in it, and that an assignment made by him or a disposition of it by his will would convey to his assignee or his legatee whatever interest might accrue to him from this policy."

In *Heer v. Reinoehl,* 58 Atl. Rep. 862, an assignment of the contingent interest of the wife, on a policy of insurance on the life of the husband before his death was held to be valid and binding on the wife.

If the insured had a right to pledge or assign his interest in the policy, then the result and conclusion is inescapable that he had a right to borrow money on it from appellant, even though the contingent interest of the appellee in the policy was thereby defeated. *Union Central Life Ins. Co. v. Wood,* 37 N. E. Rep. 180; *Taylor v. New York Life Ins. Co.,* 90 N. E. Rep. 968; *Omaha Nat. Bank v. Mutual Life Ins. Co.,* 84 Fed. Rep. 122; *Tate v. Mutual Benefit Life Ins. Co.,* 42 S. E. Rep. 892.

In procuring the policy to be issued and paying the premiums, the insured acted as the agent of the appellee

for whatever interest she had in the policy, and she is bound by his acts and representations made within the scope of his authority. *Bradstreet Co.* v. *Robert Gill,* 2 L. R. A. 405; *Sarah G. M. Miles* v. *Conn. Mut. Life Ins. Co.,* 37 U. S. Rep., Lawy. Ed., p. 128.

Counsel for appellee seem to misconceive the authorities which they cite from this court. What was said by the court in *Johnson* v. *Bacon,* 92 Miss. 156, was said of and about an ordinary life policy, and has no sort of application to the instant case. That authority simply states the general rule applicable to the class of contracts involved in that case.

We believe John Marshall said that the authority of every case ceased with the facts of that particular case.

Counsel say in their brief that the case of the *Bank* v. *Williams,* 77 Miss. 398, "is on all-fours with the case at bar" and seem to be just a little impatient with us, because we do not admit that that authority settles the whole controversy. Again we say that in our opinion counsel misconceive that authority. We insist that the Williams case does not apply to the contract involved in the case at bar. The policy in the Williams case was an ordinary life policy, pure and simple. The incorporation in the policy of the provision that if the wife predeceased the insured that the policy would be payable to the insured's legal representatives in no wise affected the legal character of the contract, and is without legal significance.

If the wife had died before her husband, her interest in the policy would have terminated, and the policy would have become payable to the husband's legal representative by operation of law. *Tompkins* v. *Levy,* 87 Ala. 263.

Williams was compelled to pay the premiums until he died in order to keep the policy in force, and in no event could he receive any benefit from the policy. The policy, therefore, was an ordinary life policy, and that char-

acter of policy was in the mind of the court when it wrote the opinion in the Williams case.

We think the statute quoted in the opinion settles it, that the possession of the policy by the wife was not necessary in order to enable her to acquire a vested interest in the policy, but it seems to us that it could have no other application to the case, because the statute, and the policy under the general rules applicable to ordinary life policies, accomplish the same result, so far as the indefeasible interest of the wife in the policy was concerned.

The statute could not apply to the policy under consideration except on the question of exemption, because it designates two beneficiaries.

The policy in the instant case was a twenty-year limit payment, and was payable to appellee in case she survived the insured, otherwise to the insured, his executors, administrators or assigns.

The probabilities were just as great that the insured would survive the appellee as they were that appellee would survive the insured. The insured therefore had as great an interest in the policy as appellee. If the insured had survived appellee, he could have exercised all the domination over the policy that he could have had over any other property.

Counsel make no answer to our argument and the authorities cited to the point that the insured, under the terms of the policy, had a right to borrow money on the policy and that the loans he procured from the appellant must first be deducted before there could be any extended insurance. They do admit, however, that if the loans are to be deducted that the policy was forfeited by the non-payment of the premiums before the death of the insured.

It seems to us that their criticism of the Miles case is altogether unsatisfactory. If that high authority holds anything, it holds that the insured was the agent of

appellee and that appellant had a right to rely on his representations, that he was unable to pay the premiums and that he wanted to surrender the policy. If he was her agent, and he was, according to the highest authority in this country, then he was her agent under the facts of this case, when he surrendered the policy and received its cash surrender value whether the appellee signed the surrender receipt or not.

We respectfully submit that the court erred in refusing a peremptory instruction for appellant.

*George B. Power* and *Willing & Davis,* for appellee.

It is a well established principle of insurance law that in ordinary life insurance policies, where no power of disposition is reserved in the insured, the beneficiary in the policy, upon the issuance of the policy, acquires a vested right therein, which cannot be impaired or defeated without his consent. See Elliot on Insurance, 354; Bliss on Insurance, 2d Ed. 517; Cook on Life Insurance, § 74, note; 2d Joyce on Insurance, § 730, 25 Cyc., 778-6, and numerous authorities cited in notes 97 thereunder; *Central Bank* v. *Hume,* 128 U. S. 195; *Pence, Admr.* v. *Makepeace,* 65 Ind. 345; *Hendri & Blotfoff M. F. G. Co.* v. *Platt,* 13 Col. App. 15; *Stigler, Ex'x.,* v. *Stigler,* 77 Va. 163; *Harley* v. *Heist,* 86 Ind. 196; *Hooker* v. *Sugg,* 102 N. C. 115; *Griffith* v. *Insurance Co.,* 101 Cal. 627; *In re Dobbel,* 104, 432; *Garner* v. *Germania Life Ins. Co.,* 110 N. Y. 266; *Jones* v. *Patty,* 73 Miss. 179; *Bishop* v. *Curphy,* 60 Miss. 23; *Cozine* v. *Crimes,* 76 Miss. 200; *Bank* v. *Williams,* 77 Miss. 398; *Johnson* v. *Bacon,* 92 Miss. 156; *Grege* v. *Grege,* 78 Miss. 443.

In the case of *Bank* v. *Williams,* 77 Miss., *supra,* which case is on all fours with the case at bar, the court held that life insurance policy designating a beneficiary is the property of the beneficiary the moment of its issuance, whether then delivered to him or not, and the pro-

ducer of a life insurance policy designating another as beneficiary has no power, without the beneficiary's consent to transfer any interest in it to a third party by deed or will.

Counsel for appellant contended in the next place that in procuring the policy to be issued and in paying the premiums, the insured acted as the agent of the appellee for whatever interest she had in the policy, and that she is bound by his acts and representatives made within the apparent scope of his authority. All the authorities are against this proposition; indeed our own court has expressly decided to the contrary in the cases of *Bank* v. *Williams,* 77 Miss. and *Johnson* v. *Bacon,* 97 Miss., *supra.*

Counsel cited only one authority in support of this contention, namely, *Sarah C. Miles* v. *Connecticut Life Insurance Co.,* 37 U. S. Rep., Lawyer's Ed., page 178. The reason the wife failed to recover on the policy in the above cited case was because the husband failed to keep up the premiums.

It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the persons named in it as the beneficiary or beneficiaries, and that there is no power in the person procuring the insurance, by any act of his, by deed or by will, to transfer to any other person the interest of the person named. Bliss, Life Ins., 2d Ed., p. 517; *Glanz* v. *Gloeckler,* 10 Ill. App. 486, per McAllister, J. S. C., 104 Ill. 573; *Wilburn* v. *Wilburn,* 83 Ind. 55; *Ricker* v. *Charter Oak Life Ins. Co.,* 27 Minn. 193; *Charter Oak Life Ins. Co.* v. *Brant,* 47 Mo. 419; *Gould* v. *Emerson,* 99 Mass. 154; *Knickerbocker Life Ins. Co.* v. *Weitz,* Id., 157.

The case of *Jackson Bank* v. *Lula B. Williams,* 77 Miss. *supra,* is exactly like the case at bar, and the court held contrary to all the propositions advanced by counsel for appellant. An examination of the record will show that

that case is identical with the policy sued on in the instant case.

MAYES, C. J., delivered the opinion of the court.

An extended discussion of the facts of this case seems unnecessary. In truth, there is very little room for dispute, in the attitude in which this record now comes to us, after the verdict of the jury finding that Mrs. Willoughby did not sign any of the documents leading up to the loan or surrender of the policy. In 1897 Julian H. Willoughby procured a policy of insurance on his life under a twenty-year payment plan, and named as beneficiary therein his wife, Mrs. Roberta Willoughby, in case she survived him, and, if she did not, the policy was then payable to the insured, his executors, administrators, or assigns. The insured died in 1908, and the beneficiary did survive him. In this aspect of the contention in this case, unless the beneficiary has done or acquiesced in something which defeats her rights in the policy as beneficiary, she is entitled to the full benefit of same. There is nothing peculiar in the contract of insurance which is the subject of litigation in this case from other life insurance policies. The contract stipulates that, if the premiums thereon shall be paid twenty years, it then becomes a paid-up policy of insurance, and no further premiums are required to keep it up. The policy has certain provisions in it which provide for its nonforfeiture after two full annual premiums have been paid. It has certain stipulations giving it a loan value and a cash surrender value, and in case of a lapse of the policy after the second annual premium payment the contract provides for an automatic extension of the policy; the length of extension depending upon the number of premiums paid. All the premiums on the policy were paid by the insured until the year 1903. At that date a sufficient amount in premiums had been paid, according to the testimony, to automatically extend the policy until

February, 1914. The insured died on October 12, 1908. It is thus seen that the automatic extension of the insurance carried the policy long past the date of the death of the insured.

The main contention in this case is that the insured procured a loan, in accordance with the terms of the policy, in 1903, of the then loan value of the policy less the premium for the current year. Subsequently the premium for 1904 was paid on the policy, part in cash and the balance by an additional loan on the policy, which was the full loan value of same, and a new certificate of loan was executed, and the original certificate of loan, made in 1903, cancelled and returned. In 1905 the last premium was paid on the policy. On May 12, 1906, the insured wrote to the company that he was financially embarrassed and wanted to surrender the policy, because he was unable to pay the premiums. Accordingly, some time during the year 1906, the insurance company sent a check to the beneficiary and the insured of the then full cash surrender value of the policy of sixty-two dollars and twenty-eight cents and canceled the policy. All the applications for the loan on the policy were required by the company to be signed by the beneficiary and the insured—that is to say, Mrs. Willoughby and her husband—and were apparently so signed. When the checks were sent to cover the amount of the loan, they were made payable to the insured and the beneficiary, and both their names appear to have been indorsed on the check when it was collected at the bank. When the application was made for the cash surrender value, and the surrender receipt signed, it was required to be signed, and was apparently signed, by the husband and the wife, and the check made payable to the husband and wife, and when collected from the bank they both apparently indorsed it. Mrs. Willoughby, the beneficiary, denies that she knew anything about the negotiations of the loans on the policy, or of the application for the sur-

render of the policy, or the collection of any of the money paid on the loans or sent by the insurance company as a surrender value on the policy, and denies that she signed the checks with her husband, or any of the applications for loans, or the surrender receipt, or that she knew anything about it, or received any benefit in any way from any of the money so received. In short, her testimony is that all these signatures which purport to be of her name were made by the husband without her knowledge, acquiescence, or consent. These facts were submitted to the jury, and they have found as facts that Mrs. Willoughby knew nothing about these negotiations, did not consent, and did not sign the checks, or receive any of the money. We must therefore assume that, although Mrs. Willoughby was the beneficiary in the policy, Mr. Willoughby, the insured, undertook to collect and dispose of the benefits of the policy without her consent.

We held in the case of *Johnson* v. *Bacon,* 92 Miss. 156, at page 163, 45 South. 858; ''Where a life insurance policy is taken out for the benefit of named beneficiaries, it vests in the beneficiaries the absolute ownership, and it cannot be assigned, transferred, deposited as collateral security, or made in any way liable for the debts of the insured without the consent of the beneficiary expressly given. If there be any attempt to assign, transfer, or in any way dispose of the proceeds of the policy by the insured, or any attempt to make same liable for his debts, and it is done without the consent and authority of the beneficiary expressly given, it is as void as if the insured undertook to dispose of property belonging to an entire stranger; and this is true, whether the premiums are paid by a solvent or insolvent insurer. *Jones* v. *Patty,* 73 Miss. 179, 18 South. 794; *Bishop* v. *Curphey,* 60 Miss. 23; *Cozine* v. *Grimes,* 76 Miss. 300, 24 South. 197; *Central Bank* v. *Hume,* 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370; *Pence, Admr.,* v. *Makepeace,* 65 Ind. 345;

*Hendrie & Blotfoff Mfg. Co.* v. *Platt,* 13 Colo. App. 15, 56 Pac. 209; *Stigler's Ex'x* v. *Stigler,* 77 Va. 163; *Bank* v. *Williams,* 77 Miss. 398, 26 South. 965.'' And in *Bank* v. *Williams,* 77 Miss. 398, 26 South. 965: ''Where the policy designates a person to whom the insurance money is to be paid, the person who procures the insurance, and who continues to pay the premiums, has no authority, by will or deed, to change the designation or title to the money. He is under no obligation to continue to pay the premiums, unless he has covenanted so to do; but, if he does so, the person originally designated in the policy will derive the benefit.'' From the above authorities it is seen that this court has already held that the right of the beneficiary named in an insurance policy to the proceeds of the policy is absolute; that is to say, the right to the benefits under the policy during the life of the contract cannot be destroyed by the insured, or disposed of, except with the consent of the beneficiary. Of course, the party taking out the policy cannot be forced to pay the premiums thereon, and in this way the policy may be destroyed; but so long as the policy has any living force all rights accruing under same and all values belong to the beneficiary.

But counsel for appellant argue that the rule announced by this court in the authorities above quoted has application only to an ordinary life policy, where there are no such incidents attached as loan value, cash surrender values, and automatic paid-up insurance, etc. We are unable to draw any distinction, in principle, whatever may be the nature of the contract, when there is a named beneficiary in the contract of insurance. It may be possible to so draw a contract of insurance as to leave in the insured a right to collect and appropriate the loan, or cash surrender value of a policy; but the contract must be a different contract from the one in this case. The contract of insurance is taken out for the benefit of the named beneficiary in the contract. The

beneficiary gets all the benefits of the contract, and the legal right of the beneficiary is not changed by reason of the fact that the contract gives certain beneficial incidents that may give to the contract of insurance a cash value during the life of the insured, unless the contract is so worded as to reserve the cash value of the policy to the insured in case he chooses to take it. The beneficiary in the policy is in every true sense the owner of the policy, and the insurance company recognizes this by requiring the beneficiary to sign when any loan is made on the policy, or any surrender value paid. The beneficiary may not be the owner of the policy in the sense that the written contract is actually delivered to the beneficiary to be kept in custody; but the beneficiary is entitled to the benefits under the contract, and is in every true sense the owner in law. It is probable that the beneficiary cannot obtain the loan value of the policy without the consent of the insured; it is probable that the surrender value cannot be obtained without the consent of the insured; but if either value is obtained, it belongs to the beneficiary.

Counsel for appellant argue to the court that the principle that, where one or two innocent persons must suffer a loss, the loss must be borne by the one who by conduct, acts, or omissions has made possible the loss; but it is our view that this principle has no application to this case. The argument assumes the existence of facts warranting its application, when the facts do not exist. The fact that Mr. Willoughby was the husband of the beneficiary, and procured the life insurance policy for her benefit, and afterwards, in disregard of her right and without her acquiescence, undertakes to dispose of the policy, certainly creates no estoppel on her part to assert her rights under the policy. If we should hold that, after one has procured a policy of insurance in favor of a named beneficiary and then disregards the rights of the beneficiary and disposes of the proceeds

of the policy, such beneficiary would be estopped from asserting any claim under the policy, the cases of *Bank* v. *Williams* and *Johnson* v. *Bacon, supra,* and all the law declared by this court on this subject would be nullified. When the husband procured the loan on the policy, under the facts of this case as found by the jury, he had no authority so to do. He was not the agent of his wife, was not acting for her, and, not being her agent for the purpose of negotiating this loan, or cancelling the policy, he had no authority, either real or apparent, and, of course, could not have been acting within the scope of any authority, because he did not have any.

This case is not without its hardships; but, while this is true, the insurance company was bound to protect itself from fraud, and, if it did not, whatever may be the morale of the question involved, the law of the land is with appellee. The hardship on the insurance company is no greater in requiring them to pay the proceeds of the policy than would be the hardship on Mrs. Willoughby, should she be required to lose the benefit of the policy on which she claims to have helped pay the premiums by teaching, because of the misdoing of the husband, of which she had no knowledge and to which she did not consent.

The instructions in this case are free from error, and the case is affirmed.