TRULY v. MUTUAL LIFE INS. CO. OF NEW YORK.

[66 South. 970.]

1. INSURANCE. *Insurance agents. Authority of. Life policies. Construction. Representations. Actions. Pleadings. Decree.*
   The soliciting agent of a life insurance company has no authority to vary the terms of a policy, nor to bind the company by representations as to what the policy will contain.

2. INSURANCE. *Life policies. Construction.*
   Where complainant did not rely upon representations made by a soliciting agent as to the terms of a life policy, such representations did not vary the policy.

3. INSURANCE. *Life polices. Representations.*
   Where a life policy which gave the insured several options at the end of twenty years, provided that, after payment of three premiums, the insurer would issue a paid-up policy for the amount required by the laws of New York, wherein the insurer was domiciled, a statement by the general agent of the insurer, purporting to illustrate the options, which informed the insured that in view of past experience; the paid-up policy should, at the end of twenty years, amount to over five thousand dollars, did not vary the terms of the policy, and absolutely entitle the insured to a paid-up policy for that amount, where the amount was to be computed upon the reserve and surplus earned by the company.

4. INSURANCE. *Life policies. Actions. Pleading. Decree.*
   Where in a suit against a life insurance company, the bill of complaint, by insured, asserted the right to a paid-up policy of five thousand, four hundred ninety dollars, and repudiated the insurer's offer to issue a paid-up policy for about four thousand dollars, it was error for the court, where the only paid-up policy to which insured was entitled, was dependent upon the reserve on the policy, including dividends and surplus, to decree that the insurer should issue a paid-up policy for the amount offered.

APPEAL from the chancery court of Jefferson county. Hon. J. S. HICKS, Chancellor.

Bill by Jeff Truly, against the Mutual Life Insurance Company of New York. From a decree, complainant appeals and the defendant cross-appeals.

Appellant filed his bill in the court below praying that appellee be decreed to issue a paid-up policy on his life payable to his wife, Mrs. Mattie Truly, and, from a decree which seems to have been intended to sustain in part and overrule in part a demurrer interposed thereto, both an appeal and cross-appeal have been prosecuted to this court.

The bill alleges, in substance, that in 1891 appellant was solicited by one Hubert Hunoldstein, an agent of appellee, to make application for a policy of insurance in appellee company; that, during the progress of negotiations between appellant and Hunoldstein, Hunoldstein wrote appellant that, among the options which would be available to him under the policy contemplated, was that at the expiration of twenty years, he could "take a paid-up policy for five thousand four hundred and ninety dollars;" that appellant, upon receiving and examining the policy, "ascertained that it contained no statement with reference to the option for its surrender for paid-up insurance at the expiration of the twenty-year distribution period, being, as before stated, the option which complainant desired to avail himself of and which had been stated to him by the soliciting agent as being available under the policy applied for." He thereupon wrote to T. H. Bowles at New Orleans, Louisiana, who is alleged to have been appellee's general agent, "setting forth the facts above detailed as to said option and requested of him a statement as to the options which would be available at the end of the twenty-year distribution period should he decide to accept the policy applied for." To this letter Bowles replied as follows:

"New Orleans, La., January 16, 1892.

"Mr. Jeff Truly, Fayette, Miss.—Dear Sir: As requested in yours of January 15th we send you the statement asked for, showing the various options to which you will be entitled at the end of the first distribution period on the policy which you applied for. After three

years' premiums have been paid and at the end of the third year you will be entitled to take a paid-up policy for three hundred and twenty-five dollars, at the end of the fourth year four hundred and thirty dollars, fifth year, five hundred and forty dollars, etc. These paid-up values are compulsory under the laws of New York and the amounts are fixed by law.

"Yours very truly,

"T. H. Bowles, Gen'l Agent, per Post."

The statement referred to in this letter, omitting therefrom the portions having no bearing on this controversy, was as follows:

"Income life policy, issued by the Mutual Life Insurance Company of New York, Richard A. McCurdy, president, four hundred and fifty-one million dollars and upwards paid to policy holders and held for future payments.

"T. H. Bowles, General Agent Louisiana and Mississippi. Louisiana Nat. Bank Building. New Orleans, La. For the use with 'Illustrations, 1891.'

"Age thirty, anl. premium one hundred and sixteen dollars and fifty cents.

"Illustration.

"Income Life Policy—Face Value five thousand dollars—Reserve one thousand two hundred and eleven dollars and sixty-five cents.—This form of contract is new and original in its essential features. Under it the policy holder has several options of settlement, or continuance, as below stated. The cash and equivolent values include the legal reserve, the amount of which is specifically guaranteed, and the surplus. What this surplus will be in the future settlements will necessarily depend upon subsequent experience. The surplus incorporated with the cash value in this example is to be understood as an approximate illustration based upon actual experience in policy settlements of recent date.

"Options at the end of twenty years:

"A—Two thousand nine hundred and eighty-one dollars and sixty-five cents in cash. 'A,' to draw in cash the entire reserve with the accumulated surplus.

"B—One hundred and four dollars and thirty-five cents annual income and two thousand nine hundred and eighty-one dollars and sixty-five cents at death. Or, 'B,' to draw annual income for life of three and one-half per cent. on the entire reserve and the accumulated surplus left with the company as a sum payable at death.

"C—Eight thousand three hundred and forty-five dollars at death. Or, 'C,' convert the accumulated surplus into paid-up additions, and continue the policy for its original amount, with subsequent dividends, by payment of original premium.

"D — One hundred and thirty-seven dollars and fifty-five cents life income and five thousand dollars at death. Or, 'D,' surrender accumulated surplus for a life income and continue original policy amount with subsequent dividends by payment of original premium.

"E—Five thousand four hundred and ninety dollars at death. Or, 'E,' surrender policy and surplus for paid-up insurance, payable at death.

"F—Two hundred and thirty-one dollars and sixty cents immediate income; four hundred and fifty-two dollars deferred income. Or, 'F,' to buy an immediate or a ten-year deferred income with total cash value.

"Insurance and Contingent Profit.
"Guaranteed.

"The following statement shows the amount payable under the policy, should death occur in any year prior to the date fixed for the distribution of dividends.

"Statement.

"Death During first year amount payable $5,000.

|  |  |  |  |  |
|--|--|--|--|--|
| second | " | " | " | do. |
| third | " | " | " | do. |
| fourth | " | " | " | do. |
| fifth | " | " | " | do. |
| sixth | " | " | " | do." |

—and continuing in like manner through the twentieth year.

Upon receipt of this letter and statement appellant, in the language of the bill, "acting upon the assurance of said general agent explaining the terms of said policy that said options were available under the said policy, although the same were not set out in the face thereof, complainant accepted said policy" and has paid twenty annual premiums thereon.

The bill further alleges that prior to the expiration of the twenty years appellant notified appellee that he desired to surrender the policy and accept a paid-up policy for the amount to which under the contract he was entitled; that appellee admitted his right so to do, but declined to issue him a paid-up policy for five thousand four hundred and ninety dollars, and offered him, instead, a paid-up policy for three thousand eight hundred and fifteen dollars, which he declined to accept. There was no allegation in the bill setting forth how this amount of three thousand eight hundred and fifteen dollars was arrived at, and the only clause in the policy dealing with the question of a paid-up policy is as follows:

"Paid-up Policy,—After three full annual premiums have been paid upon this policy, the company will, upon the legal surrender thereof before default in payment of any premium, or within six months thereafter, issue a nonparticipating policy for paid-up insurance, payable as herein provided, for the amount required by the provisions of the act of May 21, 1879, chapter 347, Laws of the state of New York."

The statute of the state of New York referred to provides:

"Whenever any policy of life insurance hereafter issued by any company organized or incorporated under the laws of this state, after being in force three full years, shall by its terms lapse or become forfeited for the nonpayment of any premium, or of any note given for a pre-

mium, or loan made in cash on the policy as security, or of any interest on such note or loan, unless the provisions of this act are specifically waived in the application, and notice of such waiver written or printed in red ink on the margin of the face of the policy when issued, the reserve on such policy, including dividend additions, calculated at the date of the failure to make any of the payments above described, according to the American experience table of mortality, and with interest at the rate of four and a half per cent. per annum, after deducting any indebtedness of the insured on account of any annual, semiannual, or quarterly premium then due, and any loan made in cash on such policy, evidence of which is acknowledged by the insured in writing, shall, on demand made, with surrender of the policy within six months after such lapse, be taken as a single premium of life insurance at the published rates of the company at the time the policy was issued, and shall be applied, as shall have been agreed in the application and policy, either to continue the insurance of the policy in force at its full amount so long as such single premium will purchase temporary insurance for that amount, at the age of the insured at the time of lapse, or to the purchase upon the same life, at the same age, paid-up insurance payable at the same time; and under the same conditions, except as to payment of premiums, as the original policy. Provided, that if no such agreement be expressed in the application and policy, the said single premium may be applied in either of the modes above specified, at the option of the owner of the policy; notice of such option to be contained in the demand hereinbefore required to be made to prevent the forfeiture of the policy. Provided, also, that the net value of the insurance given for such single premium under this section, computed by the standard of this state, shall in no case be less than two-thirds of the entire reserve after deducting the indebted-

ness as specified; but such insurance shall not participate in the profits of the company.''

The prayer of the bill was that appellee be decreed to issue to appellant a paid-up policy for the sum of five thousand four hundred and ninety dollars, and, if necessary, that the policy heretofore issued to him be reformed so as to set forth the true intent of the parties thereto at the time the same was consummated. To this bill a demurrer was interposed which was sustained by the court and the bill dismissed; but afterwards this decree was set aside, and the following decree was entered:

·  ''That the demurrer be and the same is hereby sustained to the demand of the complainant for a paid-up policy for any sum in excess of the paid-up policy shown by the bill to have been tendered to the complainant by the defendant. The complainant on the face of this bill is adjudged to be entitled only to a paid-up policy in the sum of the one already tendered him. If the complainant see proper, he may prosecute this suit for a recovery of the paid-up policy shown by the bill to have been tendered.''

From this decree both a direct and a cross-appeal have been prosecuted.

*Truly, Ratcliff & Truly*, for appellant.

*Frederick L. Allen* and *R. H. & J. H. Thompson*, for appellee.

SMITH, C. J., delivered the opinion of the court.

(After stating the facts as above). The letter written by Hunoldstein may be left out of view for the reasons: First, under the allegations of the bill he was a soliciting agent only; second, it was written before the issuance of the policy; and, third, was not relied on by appellant in determining whether or not he would accept

the policy after ascertaining that it did not contain the promised option.

The bill alleges, and the demurrer admits that Bowles was the general agent of appellee, and we will assume, without deciding, that appellant is correct when he states, in effect, that as such general agent, he had full authority to do any and all things with reference to the issuance of the policy that appellee itself could do.

The question then presented on the direct appeal is: Does the letter of Bowles, together with the statement which accompanied it, change the policy so as to make it guarantee to appellant a paid-up policy for five thousand four hundred and ninety dollars at the end of twenty years?

The letter itself refers to the statement for information relative to the particular option in question, and to the fact that "these paid-up values" (that is, the amount of a paid-up policy to which the insured would be entitled at the expiration of each year) "are compulsory under the laws of New York, and the amounts are fixed by law." An examination of the policy will disclose that this statement of Bowles was correct, for, as hereinbefore set out, the policy contains an express provision that, after the payment of three full annual premiums, the company will issue a paid-up policy "for the amount required by the provisions of the act of May 21, 1879, chapter 347, Laws of the state of New York."

The statement which accompanied the letter was undoubtedly intended to explain or "illustrate" the various options to which the policy holder would be entitled after the expiration of twenty years; but it is clear that the values therein given were not intended to be guaranteed, but were mere estimates. The statement is expressly made that:

"The cash and equivalent values include the legal reserve, the amount of which is specifically guaranteed, and the surplus. What this surplus will be in the future

settlements will necessarily depend upon subsequent experience. The surplus incorporated with the cash value in this example is to be understood as an approximate illustration based upon actual experience in policy settlements of recent date.''

This language can only mean that the cash and equivalent values stated in the illustrations of the various options are mere estimates ''based upon actual experience in policy settlements of recent date.'' If the amount for which a paid-up policy was to be issued at the end of twenty years depended in part upon the amount of surplus then to be apportioned to the policy, and if what that surplus would then be depended ''upon subsequent experience,'' it was, of course, impossible for Bowles, or any one else, to tell before the expiration of the twenty years what that amount would be. The only guaranty contained in this explanation of these options is that of the legal reserve which in express language was ''specifically guaranteed,'' which guaranty was followed by the statement that the surplus would depend upon subsequent experience, and that ''the surplus incorporated with the cash value in this example is to be understood as an approximate illustration.''

Moreover, this statement deals: First, with the options available should the insured be living at the end of the twenty years; and, second, with the amounts to be paid the beneficiary in the event of the death of the insured during any one of the twenty years. The first begins with the heading, ''Illustration,'' and in the body of the statement it is expressly stated that, ''This example is to be understood as an approximate illustration,'' while that portion of the statement dealing with the amount to be paid in event of the death of the insured begins with the heading, ''Insurance and Contingent Profit, Guaranteed,'' followed by the express declaration that, ''The following statement shows the amount payable under policy should death occur,'' etc.

It follows therefore that neither this letter nor the statement which accompanied it in any manner changed or varied the terms of the policy, and consequently appellant's right to a paid-up policy depends upon the clause of the policy hereinabove set out. *Williams* v. *New York Life Ins. Co.*, 122 Md. 141, 89 Atl. 97; *Tourtellotte* v. *New York Life Ins. Co.*, 155 Wis. 455, 144 N. W. 1117; *O'Brien* v. *Equitable Life Ins. Co.*, 173 Mich. 432, 138 N. W. 1086; *Langdon* v. *Northwestern Mutual*, 199 N. Y. 188, 92 N. E. 440. That the conclusion at which we have arrived is not in conflict with *Germania Life Insurance Company* v. *Bouldin*, 100 Miss. 660, will be disclosed by a comparison of the paper attached to the policy in that case with the paper which accompanied the letter of Bowles in the case at bar.

On cross-appeal the question presented is: Is appellant entitled to a decree under the allegations of the bill, for a policy in the sum of three thousand eight hundred and fifteen dollars?

It is true that the bill alleges that appellee offered to issue a paid-up policy for this amount, but that fact is immaterial for the reason that it was declined by appellant, and the only paid-up policy that appellee can be compelled to issue is such an one as is provided for by the laws of the state of New York, under which it seems that the amount thereof is dependent upon "the reserve on such policy, including dividend additions calculated at the date of the failure to" pay any annual premium. In order to ascertain the amount of this policy, therefore, an accounting will be necessary, and the bill is not framed in such manner as to entitle appellant thereto. In fact, it repudiates any such right and demands solely a decree for a policy in the sum of five thousand four hundred and ninety dollars. This seems to be conceded by counsel for appellant, for their brief contains no argument in support of any right in appellant for a decree directing appellee to issue to him any paid-up policy other

than the one for the sum of five thousand four hundred and ninety dollars.

The conclusions at which we have arrived render it unnecessary for us to respond to that portion of the argument of counsel for appellee wherein they contend that under the rule announced in *Mutual Benefit Co.* v. *Willoughby*, 99 Miss. 98, 54 So. 834, Ann. Cas. 1913D, 836, appellant is not the proper party to institute this suit.

The decree of the court below will be reversed, and the bill dismissed, without prejudice to the right of appellant to institute another suit in order to obtain from appellee, in event he is entitled so to do, such a paid-up policy as is provided for by the original policy issued to him.

*Reversed.*

### SUGGESTION OF ERROR.

We have given appellant's suggestion of error careful consideration, and must adhere to the views expressed in our former opinion, that option E of the statement which accompanied Bowles' letter does not guarantee appellant a paid-up policy for five thousand four hundred and ninety dollars, at the end of twenty years, but that these figures are a mere estimate of the amount of the paid-up policy to which the beneficiary in the original policy would be entitled, based upon past experience. This view of the matter is not only not in conflict with *Insurance Co.* v. *Bouldin*, 100 Miss. 660, 56 So. 609, but, on the contrary, is in full accord therewith, as will clearly appear from an examination of the language of the court at page 680 of 100 Miss., 56 So. 609, in dealing with the item of "surplus" provided for in the slip attached to the policy in that case.

In our original opinion, however, it was stated that:

"Appellant's right to a paid-up policy depends upon the clause of the policy hereinabove set out (referring to the paid-up policy clause therein) . . . and the only paid-up policy that appellee can be compelled to issue is such a one as is provided for by the laws of the state of New York."

This language is withdrawn, and no opinion will be expressed relative to this feature of the controversy.

Option E, omitting therefrom the marginal estimate of the amount of the paid-up policy to be issued at the expiration of twenty years, is as follows: "Surrender policy and surplus for paid-up insurance payable at death." It is immaterial, therefore, in so far as the determination of this present controversy is concerned, whether or not this language provides for a paid-up policy different from that provided for in the original policy, for the reason that, conceding that it does so provide, the bill is not framed in such a manner as to entitle appellant thereto. What was said in the original opinion on the cross-appeal, with reference to the sufficiency of the bill under the paid-up policy clause of the original policy, is equally applicable here.

*Overruled.*