(128 App. Div. 615.)

UNTERMYER v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    November 20, 1908.)

INSURANCE (§ 151*)—ENDOWMENT POLICY—SETTLEMENT—ACTS OF AGENT.

A 15-year endowment policy provided for apportionment at the end of the 15-year period, and that the full reserve should be then computed by the American Table of Mortality with 4 per cent. interest, and the surplus applied to the policy as then determined. The policy also declared that no agent had power to make or modify the contract of insurance by making any promise or representation not contained in the application. The agent procuring the policy delivered with it one of the company's blanks over his signature reciting that the cash value, consisting of reserve, $4,240, and estimated surplus, $2,650, would equal $6,890 at the end of 15 years, and that the paid-up participating policy would then be issued for $15,450. At the termination of said period, the cash surplus was only $1,560.90 and the additional insurance only $3,350 : such surplus and insurance being the same as apportioned to other policies of the same class. *Held*, that the instrument delivered by the agent with the policy was a mere statement of expectation, and not a promise enforceable against the company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 310; Dec. Dig. § 151.*]

Submission of controversy, pursuant to Code Civ. Proc. § 1279, between Sadie Untermyer and the Mutual Life Insurance Company of New York. Judgment for defendant.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Louis Marshall, for plaintiff.
James McKeen, for defendant.

CLARKE, J. On December 17, 1890, the defendant insurance company issued to Maurice Untermyer, the husband of the plaintiff, a policy of insurance of the class known as the 15-year distribution policy, under which, in consideration of the payment in advance of the annual premium of $374 until premiums for 15 years should have been paid, the company promised to pay to the insured, his executors, administrators, and assigns $10,000 upon acceptance of satisfactory proofs of the death of the insured during the continuation of the policy. Said policy was subject to the provisions, requirements, and benefits stated on the back of this policy referred to and made a part thereof. Among the provisions so referred to were the following:

"Dividends: This policy is issued on the 15-year distribution plan. It will be credited with its distributive share of surplus apportioned at the expiration of 15 years from the date of issue. Only 15-year distribution policies in force at the end of such term, and entitled thereto by year of issue, shall

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

share in such distribution of the surplus; and no other distribution to such policy shall be made at any previous time. All surplus so apportioned may be applied at the end of such period to purchase additional insurance, or any then be drawn in cash. After the expiration of the period of 15 years, hereinabove provided for, the dividend distribution periods shall be changed sequent period of five years elect to receive the dividend annually, the surplus may be applied at each distribution to purchase additional insurance without medical examination, provided such application of the surplus be elected in due form not less than two years before the end of the first dividend period of 15 years; otherwise a satisfactory examination will be required for each such application of the surplus. But, should the owner of the policy at the end of said first period of 15 years or at the end of any subsequent period of five years elect to receive the dividend annually, the surplus applicable on this policy will thereafter be apportioned at the beginning of each year on the anniversary of the date of this policy and may be applied as hereinbefore provided. * * *

"Surrender: This policy may be surrendered to the company at the end of the first period of fifteen years, and the full reserve computed by the American Table of Mortality, and four per cent. interest, and the surplus as defined above will be paid therefor in cash.

"Insurance with Annuity: If the policy be surrendered at the end of the first dividend period, as above provided, the company will, if requested in writing, apply its cash value, including surplus, or any part of such value, to purchase, without medical examination, a paid-up policy for the same amount as the value so applied, securing insurance for life and participating annually in dividends, together with a paid-up annuity for life, equal to three and one-half per cent. per annum of the amount of the paid-up insurance, payments of the annuity to commence one year after the end of said first dividend period. * * *

"Notice to the Holder of this Policy: No agent has power on behalf of the company to make or modify this or any contract of insurance, to extend the time for paying a premium, to bind the company by making any promise, or by receiving any representation or information not contained in the application for this policy."

Concurrently with the issuance of said policy, and bearing date the 17th of December, 1890, there was delivered to the said Maurice Untemyer by one Louis Aarons, who was acting as special agent for the defendant, and whose name over the words "special agent" appeared indorsed on the back of said policy, the following document, which was made out on a printed blank furnished by the defendant, the portions thereof printed in italics having been written into said blank in ink by said Aarons:

"Limited Payment Distribution Policies. Paid for in 10, 15 or 20 annual installments. Policy *$10,000*. Premiums payable for *15* years. Age *31*. Annual Premium *$374*. Total Premiums paid in *15* years, *$5,610*. The policyholder has at the end of the distribution period the choice of several methods of settlement. Of these three most important are shown in the following illustration, based on the past experience of the company:

"Distribution period (*15*) years.

| | |
|---|---|
| (1) Cash value, consisting of reserve, | *$4,240* |
| and estimated surplus..................................... | *2,650* |
| | *$6,890* |
| (2) Paid-up participating policy. *Without re-examination*........ | *$15,450* |
| (3) Estimated surplus payable in cash under this settlement, the | *2,650* |
| policyholder withdraws the surplus in cash and retains | and |
| the original policy, which is now fully paid up for.......... | *10,000* |
| *With reversionary additions.* | |

"*Louis Aarons*, Agent."

At the end of the 15 years, the plaintiff, to whom the policy had been duly assigned, claiming to act according to the privileges alleged by her to be conferred upon her by the terms of the policy, and by the document hereinbefore quoted, elected to take a paid-up policy for $15,450, and so notified the defendant, and demanded such paid-up policy without re-examination. The company claimed that the amount of the cash dividend was $1,560.90 and the additional insurance corresponding thereto was $3,350, and offered a paid-up policy for $13,-350. The statement of facts set forth that:

"The amount of the dividend credited to the said policy was computed in the following manner: The annual dividends which might have been declared during the 15-year period on such policy, had it been entitled to annual dividends, were accumulated with compound interest at the effective rate employed for such purpose by the company in its dividend calculation of those years, respectively, and the amount so ascertained was increased by a percentage graded mathematically according to the age of the insured by way of compensation for the risks incurred by the holder of said policy, during such period, of losing all interest in the surplus by death or discontinuance. The amount of dividend apportioned to the said policy was precisely the same as was apportioned to other policies of the same amount and kind issued at the same time and under the same terms and conditions. The determination of the amount of the dividend apportioned to the said policy was based upon the principles and methods adopted by the defendant company for the distribution of surplus accruing upon the said policy and similar policies."

The question in dispute, therefore, submitted to this court, is whether upon these facts the defendant be required to credit the said policy with $5,450 additional paid-up insurance without re-examination as claimed by the plaintiff, or with $3,350, as claimed by the defendant.

Considering the policy by itself, there can be no doubt that the plaintiff must fail in her contention. The provision is clear, unambiguous, and readily understood. No dividends were to be paid until the end of the 15-year period. Upon the policies of those who had been insured in the same year and who survived was to be credited to each its distributive share of the surplus apportioned. All surplus so apportioned might be applied at the end of such period to purchase additional insurance. This so-called surplus made up of the difference between the premiums paid and the cost of carrying the policy benefited by those policies that had expired during the period, ascertained according to the rules of the company, was to be apportioned. The whole scheme was essentially speculative and problematical. The amount to be apportioned depended upon the number of survivors, for only those who survived were to participate in the distribution. It depended upon the cost of administration of the business of the company properly apportioned to the policy during the period in which it ran. It depended upon the interest which could be earned on the investment of the premiums paid in during that period. Upon such factors there could be no more than a guess, based upon previous experience, as to the result at the end of the period. The company could promise, as it did promise, to pay a fixed and definite sum upon the death of the insured, because experience had shown the average rate of life of a person of the age of the insured, experience had shown the

rate of premium which would protect the company and insure the payment of the amount agreed upon. But when, attached to the definite promise of insurance in a definite sum, was given the speculative hope of a participation in problematic savings and earnings to the problematic survivors of a given year of insurers, the proposition upon its face became incapable of accurate solution. The policy bearing the signature of the officers of the company and its promise to pay contained no promise as to this future speculative result, but did bear in emphatic terms a notice to the holder that no agent had power on behalf of the company to make or modify this or any contract of insurance to extend the time for paying a premium, to bind the company by making any promise, or by receiving any representation or information not contained in the application for this policy.

The whole claim of the plaintiff is based upon the contemporaneous writing signed by the soliciting agent and called an illustration, her contention being that that paper, signed by the agent, because it was upon a blank furnished by the company and was delivered to the insured at the same time with the delivery of the policy, was in spite of and in the face of the warning and notice contained in the policy itself nevertheless the act of the company and binding upon it as its direct promise.

We hold upon this statement of facts that this paper was a mere presentation by the soliciting agent of the hoped for results based upon the past experience of the company, that he had no power to make it as a binding contract of the company, and that the company is not affected by it.

It follows that there should be judgment for the defendant as prayed, with costs. All concur.