Timlin, Respondent, vs. Equitable Life Assurance Society of the United States, Appellant.

*December 9, 1909—January 11, 1910.*

*Life insurance: Attached papers constituting policy: Delivery: Evidence: Transactions with persons since deceased: Construction of contract: Tontine policy.*

**1.** In an action upon a life insurance policy, plaintiff having produced a policy in the usual form (delivery of which was admitted) to which was pinned a smaller sheet of paper partly printed and partly written and not signed, the evidence (stated in the opinion) is *held* sufficient to show that both papers were

delivered to him simultaneously by defendant in carrying out the negotiations for a policy.

2. Plaintiff's testimony tending to show delivery of both papers to him was not incompetent, although the agent was dead with whom he negotiated and in whose handwriting the written parts of the annexed paper were,—the facts testified to not being such as to exclude a delivery other than by such agent.

3. The larger paper—being the usual form of policy—contained a provision that upon completion of the tontine dividend period the assured should have various options, one being to continue the policy for the original amount and apply the tontine dividend to the purchase of an annuity, the amount of dividend or of the annuity not being stated; also a provision stating that "the contract between the parties is completely set forth in this policy . . . and none of its terms can be modified except by an agreement in writing, signed," etc. The smaller paper, after stating that "these estimates are the authorized figures of the society" and describing the policy, continued: "If policy-holder is alive and policy is in force at the end of tontine period, you are then entitled to either of the following options." Following this was an option for a cash withdrawal, in which it was stated that the "guaranteed surplus is estimated at" a certain amount; and there was a further option to take a life annuity increasing annually, beginning with a certain sum, besides having the policy continued without cost for the original amount. *Held*, that the two papers thus delivered constituted the contract of insurance between the parties.

4. Differences between the two papers in texture, color, or quality have very slight weight in such a case in determining whether the contract is contained in both or in one only.

5. The obligation of the insurance company to the policy-holder under a tontine policy is that of a debtor to a creditor.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed*.

In March, 1886, the parties to this action entered into a contract of insurance, whereby the defendant, in consideration of the annual payment for twenty years of the sum of $33.26, insured the life of the plaintiff, under the semi-tontine plan, in the sum of $1,000; the tontine dividend period for the policy to be completed in the year 1906.

The plaintiff possessed two sheets of paper pinned together (Exhibit 1, pages A and B), and alleges that they together embody the contract. The larger sheet (Exhibit 1, page A),

which was partly written and partly printed, was in the usual form of a life insurance policy. Upon the back of this sheet, among the requirements and provisions of the contract of insurance, was printed the following:

"5. That upon the completion of the tontine dividend period on March 19, 1906, provided this policy shall not have been terminated previously by lapse or death, the said *William H. Timlin* shall have the option either: First, to withdraw in cash this policy's entire share of the assets: *i. e.* the accumulated reserve, which shall be five hundred and fourteen and 31-100 dollars, and in addition thereto, the surplus apportioned by this society to this policy; secondly, to convert the same into a paid-up policy for an equivalent amount, provided always that if the amount of said paid-up policy shall exceed the original amount of the assurance, a satisfactory certificate of good health from one of the society's medical examiners shall be required; thirdly, to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force on the ordinary plan; or fourthly, to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity, the amount derived from such annuity, together with the annual dividend on this policy, shall be paid in cash to said *William H. Timlin,* or assigns."

The smaller sheet, attached by a pin to the larger sheet, was partly printed and partly written and was as follows:

"The Non-Forfeitable and Incontestable Semi-Tontine Policy.

"*Equitable Life Assurance Society of New York.*

"(These estimates are the authorized figures of the society.)

"Policy, $1,000.00. Age 34. Annual Premium $33.26. Total cost in 20 years, $665.20. Kind of policy—Life in 20 payments; Tontine 20 years.

"If policy-holder is alive and policy is in force at the end of tontine period, you are then entitled to either of the following options:

| | | |
|---|---|---:|
| 1st. | Withdraw in cash— | |
| | Guaranteed legal reserve in policy is | $514 31 |
| | Guaranteed surplus is estimated at | 591 69 |
| | Total, Cash | $1,106 00 |
| 2nd. | Take paid-up policy, if in good health, for | $2,150 00 |
| 3d. | Take a life annuity, increasing annually, beginning with | 53 47 |
| | And besides have your original policy carried till death, free of cost, for | $1,000 00 |

"This pays you —— per cent., simple interest, or 4.40 per cent., compound interest, besides you have been insured 20 years for $1,000.00, without cost."

Along the side of this smaller sheet was the following:

"Tontine is a premium on living, not on dying.

"The best insurance ever devised for successful men.

"No technicalities—if we insure you we will pay your claim."

The annual payments of premiums were made as required, and at the expiration of the twenty years the plaintiff notified the defendant that he elected to take a life annuity and to have his policy carried until his death at the sum of $1,000, in accordance with the third option and upon the terms agreed upon and embodied in page B, the smaller of the two sheets of paper. The defendant refused to allow the plaintiff an annuity of more than $19.85 per year. Plaintiff brought action to enforce his claim, alleging that it had been stipulated in the agreement that the annuity, beginning at $53.47 and increasing annually, should be for life, and that he was entitled to its value, namely, $750.

There is no controversy but that plaintiff performed the conditions of the policy by furnishing a proper health certificate and by giving notice of his election. The plaintiff testified that he received the policy at about the time it bore date or shortly thereafter; that the two pages are now and have remained attached while in his possession, in the form and manner they were in when produced on the trial; that its condition is now the same as it was when he received it; that he made his payments in reliance upon the conditions and stipulations of both pages A and B; and that the agent with whom he carried on the negotiations for the policy is now dead.

This is an appeal from the judgment rendered on the verdict which was directed by the court in favor of the plaintiff.

For the appellant the cause was submitted on the briefs of *Winkler, Flanders, Bottum & Fawsett.* They contended, *inter alia,* that the paper in question, construed as a promise on the part of the defendant to pay a fixed sum as surplus, in cash or in the form of an annuity, at the expiration of the tontine dividend period, was wholly inconsistent with the pol-

icy applied for by plaintiff, and directly contradicted the terms of the paper signed and authenticated as the contract, and which corresponded precisely with what plaintiff applied for. *Bogardus v. New York L. Ins. Co.* 101 N. Y. 328, 338; *Avery v. Equitable L. Assur. Soc.* 117 N. Y. 451; *Langdon v. Northwestern Mut. L. Ins. Co.* 116 App. Div. 558, 101 N. Y. Supp. 914; *Untermyer v. Mut. L. Ins. Co.* 128 App. Div. 615, 121 N. Y. Supp. 221; *Horncastle v. Equitable L. Assur. Soc.* 22 Times Law Rep. 735; *Ruse v. Mut. B. L. Ins. Co.* 23 N. Y. 516; *Clinton v. Hope Ins. Co.* 45 N. Y. 454; *Vilas v. New York Cent. Ins. Co.* 72 N. Y. 590; *Planters' Mut. Ins. Co. v. Rowland,* 66 Md. 236, 7 Atl. 257; *Stone's Adm'rs v. U. S. C. Co.* 34 N. J. Law, 371.

For the respondent there was a brief by *Nathan Glicksman* and *W. L. Gold,* and oral argument by *Mr. Glicksman.*

SIEBECKER, J.    Under the issues raised by the pleadings and the evidence the controversy between the parties presents the questions: first, Were the two sheets of paper, marked "Pages A and B of Plaintiff's Exhibit 1," as produced by the plaintiff, delivered to him by the defendant? and secondly, Do they together embody the life insurance contract made by the parties?

It is contended by the defendant that there is no proof that page B was ever delivered to the plaintiff by the defendant. The defendant admits that shortly after its date it delivered the sheet marked "Page A" to the plaintiff. The plaintiff testified that no one was authorized to receive the policy for him; that he had possession of it from the time of its manual tradition to him to the time he gave it to his attorney in this action; that the sheets had always been united by being pinned together, and that the two sheets have been inclosed in the envelopes in which they were received by him, in the same form and condition while so in his possession as they were when he produced them. Plaintiff also testified that he re-

ceived no other writing·or paper pertaining to this contract, and that he paid the annual premiums as required thereby.

The facts and circumstances of the transaction tend to support the trial court in its conclusion of fact that page B was delivered to the plaintiff simultaneously with page A. It is claimed that if there was delivery of both pages to the plaintiff the evidence is conclusively to the effect that the agent, Jones, now dead, so delivered them, and hence all of the plaintiff's evidence bearing on this fact is incompetent. The evidential facts of the transaction do not so impress us. The facts and circumstances showing tradition of pages A and B by the defendant to plaintiff do not exclude means of delivery other than by the agent, Jones. As has been suggested, it may have been accomplished by mail or through other appropriate channels or some other authorized person. In the light of the facts and circumstances shown, plaintiff's possession and production of pages A and B sufficiently establish that they were transmitted to him by the defendant in carrying out the negotiations for the contemplated life insurance policy. It is, however, averred that the fact of such delivery of page B is no proof that the statements therein are a part of the insurance contract made by the parties. True, such delivery in itself is not proof conclusive that the writing on this page embraces a part of the contract, but such fact, in connection with the other facts of the transaction, has a material and significant bearing, and tends to show that the contents of this page embody a part of the negotiations had between the parties and that they are expressed in the writing.

It is argued that the provisions contained in page A show that it was understood and stipulated that this sheet embraced the whole contract and therefore that page B is excluded therefrom. Stress is placed on the provision that "the contract between the parties hereto is completely set forth in this policy, and the application therefor, taken together, and none of its terms can be modified, . . . except by an agreement in

writing," signed by one of the authorized officers.    There is
nothing in this provision excluding page B from being a part
of the policy, for the question remains: What, under this pro-
vision, constitutes the policy?    Plaintiff asserts that it con-
sists of the agreement set forth on pages A and B, while the
defendant claims that page A alone covers it.    We do not con-
sider that the words "this policy," as used in this provision,
restrict it to page A.    The term as here used is applied to the
contract made by the parties, and in this connection embraces
the agreements of the parties, whether embodied in page A or
in both pages A and B.    We cannot, therefore, from these
words determine whether the contract of the parties is in-
cluded in page A or in both pages A and B.

It is urged that the provisions contained in page B, in con-
nection with its physical appearance and the manner of its at-
tachment to page A, indicate that page B is not a part of the
written contract made by the parties.    Upon this point the
argument is made that in their very nature the contents of
page B are manifestly mere statements made by the soliciting
agent and mere inducements held out by him to induce the
plaintiff to take the policy of insurance as set forth on page A,
and that the appearance of page B, in the handwriting of
Jones, the soliciting agent, is a persuasive fact confirming
this claim.    The contents of page B are of the nature and
form which significantly indicate their purport.    They are
expressive of promises and agreements.    For example, the fol-
lowing: "If policy-holder is alive and policy is in force at the
end of tontine period, you are then entitled to either of the
following options."    This language is followed by provisions
which specifically set out the options, and at the bottom of the
page the statement is made that the investment will pay a
specified amount of compound interest, and, without cost, will
insure the plaintiff for twenty years for the amount named in
the policy.    These portions are clearly expressive of promises
and are phrased in appropriate language of contractual obliga-

tions. When read in connection with the other page of the con-
tract they have probative force as showing that the parties con-
sidered both pages together in their negotiations, and they
tend to support the claim that they are part of the contractual
transaction. The physical appearance of, the sheets, as pre-
sented by the differences in the texture, color, or quality of the
paper, has very slight weight in determining the question at
issue. It is readily perceived that such differences do not
negative the probability that these sheets were used by the
parties to write the contract made by them.

The contention is made that the temporary union of pages
A and B, effected by means of a pin, shows that the parties
did not regard them as one document, and it therefore nega-
tives the claim of plaintiff that they together set forth the
agreement. This fact has intrinsic evidential force in throw-
ing light on the other facts of the transaction from which the
intent of the parties must be gathered. Considering the facts
of the transaction it manifestly corroborates the claim that
the subject matter and the contents of both pages were treated
as material parts of the negotiations, and that the contents of
both express the result thereof, and it tends to show that the
two pages were incorporated as "the policy" to conform to the
requirements and conditions on page A.

Much stress is placed on the use of the word "estimate" on
page B as indicating that this page is merely a statement to
show plaintiff the hoped for results of a contract such as is em-
bodied in page A. We must look to the connection in which
the word is employed. It is shown to refer to a future condi-
tion, namely, the financial value of the contract judging from
the present knowledge, which is derived from the experience
of the company in carrying this class of contracts. Mani-
festly, such knowledge did not furnish an absolutely definite
basis for determining the financial value of the contract at
maturity. It is however well known that persons are con-
stantly undertaking definite financial obligations regarding

affairs wherein the financial results are as uncertain as they were in this transaction. While this element was present it was one which the parties might well agree to fix definitely by an estimate based on the results theretofore ascertained from the experience of the company in this class of business under like conditions. We find nothing in the use of this word in the first option pertaining to the "guaranteed surplus" which necessarily implies or signifies that it referred to a problematical result. Its use, with the words "guaranteed surplus," naturally signifies that the parties fixed the surplus that was to be apportioned to this contract at maturity out of the surplus earnings. This meaning is corroborated by the other options, which are couched in words of clear meaning and definite promises. The option selected by the plaintiff contains a promise of a life annuity beginning with $53.47 and increasing annually, and also a promise to carry the policy for $1,000 free of cost until death. This in itself is an unambiguous promise and an assumption of an obligation by the defendant. It covers the liability of the company under the contract to administer the interests of a large number of persons to a fund held by the company for their benefit. In considering this phase of the case it should be borne in mind that the nature of the obligation of an insurance company to a policy-holder under the tontine dividend periods, as specified in this contract, is that of a debtor and creditor under the stipulations of the agreement. *Uhlman v. N. Y. L. Ins. Co.* 109 N. Y. 421, 17 N. E. 363; *Gadd v. Equitable L. Assur. Co.* 97 Fed. 834. Viewing the pages A and B in the light of their contents, we find that they obviously treat of the same subject matter, and that the various provisions are in accord and are harmonious and mutually complementary. It is manifest that the agreements of page B make definite and certain what was left indefinite in the fifth paragraph of "provisions and requirements" of page A. This seems a most natural and reasonable thing for a person to do in negotiating for

life insurance. The all-important questions for the applicant are the amount of the premiums and the financial value of the contract at its maturity. And so, here, it is evident that the plaintiff sought to purchase insurance that would yield him definite financial returns, and that the defendant company stipulated that the contract would yield the amounts specified in page B if it should be in force at the end of the tontine period. The argument of the defendant that the company did not so contract because the company was unable to make that certain which in its very nature is uncertain is fully met by the fact that they may and probably did have sufficient information on the subject to warrant them in undertaking this obligation. This is sustained by the statement on page B that "These estimates are the authorized figures of the society." It is evident that the parties agreed upon the amount to be apportioned to this policy under its provisions as a tontine dividend policy, a matter which is usually left unascertained. Provision is made that the company shall apportion it when the contract matures.

In the light of all the facts and circumstances of the case, we are persuaded that the defendant delivered Exhibit 1, consisting of pages A and B, as the contract of insurance, and that they together constitute the contract made by the parties. This result demands affirmance of the conclusions of the trial court respecting the facts and the law and of the judgment awarded.

*By the Court.*—Judgment affirmed.

TIMLIN, J., took no part.