## JOHN WHITRIDGE WILLIAMS

*vs.*

## THE NEW YORK LIFE INSURANCE COMPANY,
INCORPORATED.

*Speedy Practice Act*: *execution of contracts; question must be
specially raised by pleadings. Contracts: interpretation,
for courts; parol evidence, inadmissible either to deny
or confirm; preliminary representations; merger;
laws governing contracts; lex loci contractus.
Insurance policies: slips attached there-
to; effect of——. Interest: delay,
due to claimant.*

The execution of a contract is a question of fact which,
under the Practice Act for Baltimore City, must be pleaded if
the defendant desires to put in issue the execution of the con-
tract.                                                      p. 145

The question of the proper interpretation of a contract is a
question of law, to be passed upon by the Court.           p. 145

No question can be passed upon by the Court of Appeals
unless it appears by the record to have been decided by the
court below.                                               p. 145

Parol evidence is not admissible to contradict the terms of a written contract.                                    p. 146

Parol evidence is not admissible to confirm the items of a written contract between the parties where no ambiguity has been alleged.                                    p. 146

Preliminary representations made as to a written contract become merged in the contract as finally executed.    p. 147

The mere fact of the fastening of a slip to a policy of insurance does not make it a part of the contract of insurance, where there is no reference on either the policy or slip of the one to the other.                                    p. 147

It is competent for the contracting parties to agree that the contract shall be construed according to the law of a particular State, and in construing the contract such an agreement will be observed.                                    p. 147

Where a definite sum of money is payable at the expiration of a time certain, without demand, interest is generally allowed from the time the money should have been paid; but if the failure to receive the money when it was payable was due to the party's own action, he is not entitled to receive any interest.

p. 148

Where a slip, that is neither signed nor initialed, has been pasted or affixed to an insurance policy, without anything to indicate that the slip was or was intended to be any part of the contract, it forms no part of the policy of insurance. p. 147

*Decided December 19th, 1913.*

Appeal from the Baltimore City Court (STUMP, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BRISCOE, J., who presided. and BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Stewart Brown, for the appellant.*

*W. Thomas Kemp* and *George Whitelock* (with whom were *John B. Deming* and *James H. McIntosh*, on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In 1892 the appellant, then twenty-six years of age, made an application to the New York Life Insurance Company, through Howland & Howard, general agents in the City of Baltimore, for insurance upon his life. The application was upon a blank form of the company, and in reply to the questions contained in it, the applicant designated the amount and character of insurance desired. The policy asked for was to be for $10,000—of the description known as "Life, 20 premium". It further provided that it should be an "accumulation policy", and the applicant stated "I select the 20-year "accumulation period". The application bore date the 25th July, 1892, and the policy issued thereon is dated October 3rd. 1892. An examination of the policy shows that it conformed in every particular to the description in the application. It was an accumulation policy, the end of the accumulation period was given as July 25, 1912, and provided that on the arrival of that date the insured should be entitled to one of six options, the first of which was to continue the policy, and *"receive the dividend apportioned by the company"*. On the third page of the policy is pasted a type-written paper, worded as follows:

Statement.

Age 26.                                    $10,000.

Life 20 Payment.

20 Year Period.

Annual Premium........................$  323.00
Total Premiums paid in 20 years.......... 6,460.00

Settlement at End of 20 Years.

1. Surplus payable in cash...............$3,827.20

Policy paid up for $10,000

(with annual dividends).

2. Cash value, consisting of

Reserve. . . . . . . . . . . . . . . . . .$4,380.00

Surplus. . . . . . . . . . . . . . . . . 3,827.20

————— $8,207.20

3. Paid Up Policy payable at death. . . . . . .$19,400.00

After three years, Policy Non-Forfeitable.

After five years, Advances as loans of 60% of
premiums paid.

Policy absolutely free of restrictions.

Examples of Amounts Payable by Death.

| Amount of Policy. | Mortuary Dividend. | Total. |
|---|---|---|
| 1st year... $10,000 | $ 323 | $10,323 |
| 5th year... 10,000 | 1,615 | 11,615 |
| 10th year... 10,000 | 3,230 | 13,230 |
| 15th year... 10,000 | 4,845 | 14,845 |
| 20th year... 10,000 | 6,460 | 16,460 |

In January, 1912, six months before the arrival of the
final accumulation date, the company notified Dr. Williams
of the approaching termination of the accumulation period,
and offered to continue the policy in force, and either pay
him in cash $2,187.60, or give him an additional paid up
insurance to the amount of $3,990—or an annuity of $124.30.
In June Dr. Williams elected to take the first of the options
presented to him, but at the same time insisted that the slip
pasted on his policy was a part of the contract, and that
in accordance with it he was entitled to receive in cash
$3,827.20, instead of $2,187.60. This claim being denied
by the company, Dr. Williams brought suit under the Prac-
tice Act, in October, for the full amount claimed by him,
$3,827.20. The defendant in the affidavit to its pleas
admitted $2,187.60 to be due, but disputed the remainder
of the claim, $1,639.60.

The plaintiff then moved for judgment for the amount
admitted to be due, $2,187.60, and four months interest
thereon from July 26th. On this motion a judgment was
entered for the amount admitted, without the interest, and

on the same day the judgment was entered satisfied. The case then proceeded to trial as to the disputed portion of the plaintiff's claim, and at the close of the evidence given on behalf of the plaintiff, a verdict was returned in favor of the insurance company, under the direction of the Court, and judgment entered accordingly. Two bills of exception appear in the Record, one to the ruling of the Court on evidence, and one to the granting of the defendant's prayer.

The first contention of the appellant arises on the pleadings. This is in effect, that inasmuch as the policy sued on had the slip above referred to pasted on it, that the failure to deny the execution of the policy must be taken as an admission that the slip constituted a part of the contract, and that it is, therefore, an admission of the correctness of the claim of the plaintiff. The fallacy of the contention lies in this: The execution of the contract was a question of fact, which under the Statute must be pleaded if the company desired to put in issue the execution of the policy, whereas the question of the proper interpretation of the contract was a question of law to be passed upon by the Court. *Roberts* v. *Bonaparte,* 73 Md. 191; *Van Camp* v. *Smith,* 101 Md. 565.

But in addition to this, the point now sought to be raised nowhere appears to have been presented in the Court below. The motion for the judgment after the filing of the defendant's pleas, was not a motion for a judgment for the full amount claimed by the plaintiff, but only for the sum admitted to be due. It is settled by the Statute, Code, 1912, Article 5, section 9, that no question will be passed on in this Court, which does not plainly appear by the record to have been decided by the Court below, and this Court has been compelled in a long line of cases to give effect to this provision.

The first exception was reserved to the sustaining of an objection by the Court to a question asked of the plaintiff on direct examination: "Didn't he (referring to the agent of the

defendant) sell you insurance to pay a specified amount of cash, paid-up insurance, and so forth, under options at the end of twenty years or did he sell you some other kind of insurance?" The contract sued on was a written policy of insurance. If the purpose of the question was to contradict the terms of the contract it was clearly inadmissible; *Barker* v. *Borzone,* 48 Md. 474; *Farrow* v. *Hayes,* 51 Md. 498; *Eckenrode* v. *Chemical Co.,* 55 Md. 51, and if the purpose was to confirm the terms of the policy, it was equally inadmissible for the reason that there was no occasion to confirm the terms of a written contract between the parties where no ambiguity was alleged.

There remains for consideration the main issue in the case, raised by the granting of the defendant's prayer, that under the pleadings and evidence the plaintiff had offered no legally sufficient evidence to entitle him to recover. The correctness or incorrectness of this is dependent upon the interpretation to be placed on the contract, and whether or not the slip pasted on it, already quoted, was a part of the contract between the parties, and if it was, what effect, if any, did it have upon the policy itself?

It is to be noted at the outset that the slip is neither signed nor initialed nor is there anything upon it to indicate that it was, or was intended to be, any part of the contract. Where or how it originated is not shown by the evidence. Dr. Williams testifies that the only time he ever saw the policy was when Mr. Howland delivered it to him, and that at that time it had the type-written slip pasted on the third page; but he further testifies, that that is what he relied on in taking out the policy, those figures. This is a manifest impossibility. The insurance was taken out in July, and the policy was not made out until October. He could not then have relied in taking out this insurance upon something which had no existence until three months later. But he further says, and this is probably what he means, that the agent who solicited the insurance made him certain representations as to figures, and

that this slip corresponded with the representations made to him. Whatever the representations may have been, they were merged in the contract. *Horner* v. *Beasley,* 105 Md. 193.

The mere fact of the fastening of the slip to the policy could not make it a part of the contract where there was no reference on either policy or slip of the one to the other. *Stone's case,* 34 N. J. Law 371; *Hill* v. *Travellers Ins. Co.,* 146 Iowa, 133; and such text writers as Cooley, Kerr and May.

The application was for a definite kind of a policy, and the policy itself was exactly of the kind asked for in the application. The character of the policy was one incompatible with any certain, assured amount of dividend payable to the holder of it at the termination of the accumulation period. The most that it was possible to do, was to estimate what the amount would be. The slip it is true does not use the word "estimate," but is entitled "statement". But what is it a statement of? A definite, guaranteed cash payment at the expiration of the twenty year term? It does not say so. The terms of the policy are that the holder of it shall at the end of the accumulation period be entitled to receive "the dividend then apportioned by the company," and to that method of ascertaining the dividend, the assured assented to in his application. This case in all its material facts is closely akin to the case of *Untermyer* v. *Mut. Life Co.,* 128 N. Y., A. D. 615, and the rule as laid down in that case is equally applicable here. Nor is this situation relieved by the fact that the contract was a Maryland one, for it was expressly stipulated in the application, that the contract contained in the application and policy "shall be construed according to the law of the State of New York," an agreement which it was perfectly competent for the parties to make. *Mittenthal* v. *Mascagni,* 60 L. R. A. 812.

Finally the appellant insists that he is entitled to have the judgment in this case reversed, because he was not allowed any interest, even on the dividend as apportioned to him by the company.

In England on actions on policies of insurance interest on sums payable at a time certain, where there is no contract to pay interest, and no usage and no demand, is given only in actions on bills of exchange and promissory notes and other commercial securities. *Higgins* v. *Sargeant,* 2 Barn. & C. 348. In this country where a definite sum of money is payable at the expiration of a time certain, without demand, interest is generally allowed from the time the money should have been paid. *Dodge* v. *Perkins,* 9 Pick. 368; *Foote* v. *Blanchard,* 6 Allen, 221; but in insurance policies it often happens that there is some dispute about the amount due, or the person to whom it is payable, or the event on which it becomes payable, which takes it out of the general rule. *Hutchinson v. Liverpool L. & G. Ins. Co.,* 153 Mass. 143; *Pierce* v. *Charter Oak L. Ins. Co.,* 138 Mass. 151, cited with approval in *Hardy* v. *Lancashire Ins. Co.,* 33 L. R. A. 241. So in this case the appellant was notified in January of the dividend apportioned and payable to him on July 25th. That he did not receive it at that time was due to his own action from which developed a dispute as to the proper construction of the policy, and the amount payable thereunder. No error is perceived in the rulings of the Court from which this appeal was taken, and the judgment will accordingly be affirmed.

*Judgment affirmed, with costs.*