Tourtellotte v. New York Life Ins. Co. 155 Wis. 455.

TOURTELLOTTE and another, Appellants, vs. NEW YORK LIFE INSURANCE COMPANY, Respondent.

*December 12, 1913—January 13, 1914.*

*Life insurance: Construction of contract: Tontine policy: Illustrative statement: Cash value not guaranteed.*

A life insurance policy provided that at the end of twenty years, if it was then in force, the insured might, at his option, "withdraw in cash the entire equity (that is, the net reserve, being $3,607.20, and in addition thereto the accumulated surplus" apportioned by the company to the policy). Delivered with the policy, but not attached to it, was a statement purporting to "illustrate" the contract but containing no words of promise or guaranty. This statement showed a cash value of $8,160 at the end of twenty years, but the figures used therein were expressly said to be "based on the results realized on tontine policies which have matured during the current year in this company." Treating such statement as a part of the contract of insurance, it is *held* that it did not change the policy so as to make it guarantee or promise a cash value of $8,160 at maturity. *Timlin v. Equitable L. Assur. Soc.* 141 Wis. 276, distinguished.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Action to recover the amount of $8,160 claimed to be due on an insurance policy, less the sum of $3,420 admitted to be owing from plaintiff *Tourtellotte* to defendant upon a loan evidenced by his note. In 1892 the plaintiff *Tourtellotte* made application to the defendant for a distribution policy of $10,000 with a special guaranty and mortuary dividend. The policy of insurance, in the usual form, numbered 454,346, was delivered to him pursuant to the application. The policy contained, among other provisions, the following:

"This policy is issued on the distribution policy plan, the particulars of which are as follows:

"That the distribution period for this policy be completed on the 28th day of February in the year nineteen hundred and twelve.

"That no dividend of surplus shall be allowed or paid upon this policy, unless the insured shall survive until completion of its distribution period, and unless this policy shall then be in force.

"That surplus or profits derived from such policies on the distribution policy plan as shall not be in force at the date of the completion of their respective distribution periods, shall be apportioned among such policies as shall complete their distribution periods.

"That after the completion of the distribution period, provided this policy shall not have been previously terminated, this policy shall secure to the insured one of the following benefits:

"First. To apply the accumulated surplus apportioned by the company to this policy to the purchase of an annuity on the life of the insured to be used in reduction of subsequent premiums on this policy, and in case the amount accruing in any year from the annuity shall exceed the amount of premium due thereon, the excess to be paid in cash.

"Second. To continue the policy for the original amount and withdraw in cash the accumulated surplus apportioned by the company to this policy.

"Third. To withdraw in cash the entire equity (that is, the net reserve, being thirty-six hundred and seven dollars and twenty cents ($3,607.20) and in addition thereto the accumulated surplus aforesaid).

"Fourth. To convert the entire equity into a paid-up policy without participation in profits, for an amount to be determined by the method then in use by the company in determining paid-up policies of this class; provided that this policy is legally surrendered during the lifetime of the insured and within ninety days from the completion of the distribution period.

"Fifth. The conversion of the entire equity into a life annuity upon the life of and payable to the insured.

"Sixth. To continue the policy for the original amount and to convert the apportioned surplus into a reversionary addition conditioned upon satisfactory re-examination.

"These benefits are at the option of the insured."

The policy was delivered by mail, and the jury found by special verdict that inclosed with the policy, but not attached

thereto, was the following statement, marked Exhibit 2, and that it was the intention of the parties that such statement should be a part of the contract of insurance:

"STATEMENT.                     Assets  115,000,000.00
                              Surplus   15,000,000.00
                        Annual Income   32,000,000.00
             Illustrating Contract No. 454,346
                              of the
             New York Life Insurance Company,
                              for
                   Mr. Mills Tourtellotte.
         Age 38.
         $10,000."

(Here follows a tabular statement, the first column of which enumerates the policy years from 1 to 20, the second and third columns show the total amount deposited and contain the company's guaranty to loan any or all of the premiums after the tenth year at the rate of six per cent. per annum. The fourth column shows the total amount of protection guaranteed in case of death, being $10,000 for each of the years from 1 to 10, inclusive, and from eleventh to twentieth, inclusive, increasing from $10,342 in the eleventh year to $13,420 in the twentieth year, or $342 each year. The fifth column shows the net profits for each year, assuming death occurred in that year, over amount invested. The sixth column guarantees a proportionate protection in case of discontinuance after three full annual deposits have been made.) The statement then continues:

"At the end of twenty years the contract guarantees (as expressed therein) an option to the holder between six different methods of settlement. The three principal of these methods are illustrated below; the figures there given are based on the results realized on tontine policies which have matured during the current year in this company.

"First option, cash value, $8,160.

"Second option, paid-up policy for $13,400.

"Third option, continue policy at original rate less annual dividends $10,000 and $4,553 in cash.

"Non-forfeitable, as per terms of contract after three full annual deposits have been made."

At the end of the distribution period plaintiff *Tourtellotte* exercised the third option mentioned in the policy, or the first in the statement accompanying the same, namely, to withdraw in cash the entire reserve and surplus value of the policy. Upon being informed by the company that the total cash value of his policy amounted to $5,889.60, the plaintiff *Tourtellotte,* under date of January 26, 1912, sent a letter to the defendant which contained, among other things, the following statements:

"I have from your branch office Milwaukee, letter of the 22d inst., advising me that the total cash value of said policy at maturity will be $5,889.60, which covers a dividend of $2,282.40 and the reserve of $3,607.20, and after deducting the amount of the note of $3,420 will leave a net of $2,469.60. This result is not in the least satisfactory and I protest against any such discharge of the obligation and I refuse to accept it.

"Accompanying the policy and in illustration of said contract No. 454,346 (given out and issued by authority of your company) is a written and printed guaranty which gives the cash surrender value thereof at maturity of $8,160, and after deducting the outstanding note of $3,420 leaves a net value of $4,740 which your representation showed and that I had a right to expect in cash at this time."

Then follows a statement showing what he had paid to the company, and the letter continues:

"This is too far short of what the results should be and what were represented they would be. The only logical conclusion is that a mistake has been made, in that I have not been credited with the earnings of the note feature of the contract. That the notes have been charged off against the cash earnings. Certainly if I am to be charged with the notes I should have credit for the earnings due to the loan feature thereof. The payment of the notes makes the whole trans-

action on a cash basis and the earnings must be figured as such. . . . So I say again that the net return of $2,469.60 is a mistake or I have been robbed of my just application of profits honestly applicable to my contract. There has been too little applied to the policy and too much gone to make up that many millions surplus we hear so much about.

"I am entitled to profits from lapses, guaranteed surplus and an honest division of earnings derived from the premiums both from the cash and note payments. Can you have those figures verified and see if there is not some mistake somewhere that justifies me in making this complaint? What I demand in the option available is the full cash surrender value, but I decline to settle for the sum named. It is not right, fair, or just."

In reply the company informed plaintiff *Tourtellotte* that the amount stated was correct, whereupon he brought this action against it claiming that the contract guaranteed the payment of the sum of $8,160. The defendant denied that the policy guaranteed the payment of $8,160 in any event, and alleged that the plaintiff *Tourtellotte* was entitled to receive as the cash value of said policy the entire equity (that is, the net reserve), expressly stipulated in the contract to be the sum of $3,607.20, and, in addition thereto, the accumulated reserve apportioned and distributed in accordance with the principles and method adopted by it to determine the amount equitably belonging to said policy, which amount was apportioned on the 28th day of February, 1912, and was the sum of $2,282.40, making in the aggregate the sum of $5,889.60.

The action was tried by a court and jury. A special verdict of two questions was submitted, as follows: (1) Was Exhibit 2 inclosed and delivered by the defendant to the plaintiff *Mills Tourtellotte* with Exhibit 1? Answered by the court, Yes. (2) Was it the intention of the parties at the time of the delivery of the policy that Exhibit 2 should constitute and be a part of the contract of insurance? Answer, Yes. (Exhibit 1 referred to above was the policy sued upon.) The plaintiff the *National Bank of La Crosse* held the policy

when it matured as collateral security to a loan made by it to the plaintiff *Tourtellotte*. The court entered judgment for the defendant notwithstanding the verdict, and the plaintiffs appealed.

*George H. Gordon*, for the appellants.

For the respondent there was a brief by *McConnell & Schweizer*, attorneys, and *James H. McIntosh*, of counsel, and oral argument by *Mr. C. H. Schweizer* and *Mr. McIntosh*.

VINJE, J.   The question raised by the appeal is, Does the statement, Exhibit 2, treating it as a part of the contract of insurance, change the policy so as to make it guarantee or promise a cash value of $8,160 at maturity? The trial court held that it did not. Was such ruling correct? The statement purports to do nothing but illustrate or explain the contract. It contains no words of promise or guaranty. It does not even guarantee an option between the six different methods of settlement, for it says the contract (as expressed therein) does that. Then it proceeds to *illustrate* the three principal of these methods, and says expressly that the figures there given are based on the results realized on tontine policies of the company maturing the current year. There is not even an intimation or suggestion that the same results may be expected in the future. The only rational construction that can be given the statement, taken in connection with the policy, so far as the question at issue is concerned, is that it shows what the first option will be worth if the earnings of this policy equal that of tontine policies of the company maturing the current year. There is no claim that, based upon the results stated, such was not the value of the option. The language of the statement attached to the policy in the case of *Timlin v. Equitable L. Assur. Soc.* 141 Wis. 276, 124 N. W. 253, was quite different. It was held to contain words of promise as to the amount to be paid, while here we have language which purports only to illustrate the policy, and which states the source

of the figures upon which the illustration is based.   For cases in which it has been held, under somewhat similar statements in connection with the policy, that there was no guaranty as to amount, see *Untermyer v. Mutual L. Ins. Co.* 128 App. Div. 615, 113 N. Y. Supp. 221; *Langdon v. Northwestern Mut. L. Ins. Co.* 199 N. Y. 188, 92 N. E. 440; *Grange v. Penn Mut. L. Ins. Co.* 235 Pa. St. 320, 84 Atl. 392.

That the plaintiff *Tourtellotte* understood his contract of insurance was one that, upon completion, entitled him to a guaranteed reserve of $3,607.20 and in addition thereto its equitable share in the surplus or profits, is quite evident from his letter to the company set out in the statement of facts.   It is true he there refers to the statement in illustration of the contract, but that such reference was made for the purpose of emphasizing the inadequate result rather than as a claim for the specific amount of $8,160 is quite apparent from the concluding part of the letter, where he says: "I am entitled to profits from lapses, guaranteed surplus, and an honest division of earnings derived from the premiums both from the cash and note payments.   Can you have those figures verified and see if there is not some mistake somewhere that justifies me in making this complaint?" If he had thought he was entitled to an absolute amount of $8,160 he would not have written thus.   The claim that he was entitled to such sum and in addition thereto a share of the earnings is wholly untenable.   The trial court correctly construed the contract of insurance.

*By the Court.*—Judgment affirmed.   .