JACOB L. KALEY, APPELLANT, v. NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY, APPELLEE.

FILED FEBRUARY 1, 1918.   No. 19766.

1. Insurance: SEMITONTINE POLICY: ESTIMATE BY AGENT. A paper en-
titled "A Conservative Estimate of a Semitontine Policy," incon-
sistent in several respects with the conditions of the policy, was
shown to an applicant for life insurance by an agent and was signed
by the agent. It was also attached by the agent to the policy when
it was received by him from the main office of the insurance com-
pany, and it was then forwarded by him to the insured by mail.
The application and policy both contained limitations on the
authority of the agent, and the officers of the company had no
knowledge of the existence of the paper or of its having been
attached to the policy. In this action to recover the difference
between the amount due under the policy and the amount stated
in the "estimate," it is *held* that the policy and application con-
stituted the contract, and that the insurer was not bound by such
"estimate."

2. ———: AUTHORITY OF AGENT: ESTIMATE. An agent of a life in-
surance company, the limitation of whose power is set forth in the
application for insurance, which limitation is expressly called to
the attention of the applicant, cannot vary the terms of the policy
by an estimate of results of the policy attached by him thereto.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE. *Affirmed.*

*John P. Breen,* for appellant.

*Montgomery, Hall & Young,* contra.

This action is brought to recover $976.10 with in-
terest, being the difference between the amount paid
plaintiff by defendant on a policy of insurance and
the amount which he claims is due under the terms of
the policy. The trial court found for defendant. Plain-
tiff appeals.

In 1889 plaintiff purchased a semitontine, twenty-
payment life insurance policy from the defendant.
At the time he agreed to take the policy J. H. Mockett,

Jr., one of the firm of Mockett & Son, state agents for defendant, explained the nature of the insurance to him, and made out and signed the following "estimate" on a printed blank form:

"A Conservative Estimate of a Semitontine Policy in the Northwestern Mutual Life Insurance Company of Milwaukee, Wis.

Kind-20 Yr. S. T. 20-payment life. Age-36. Amount of policy-$2,500. Annual premium for 20 years-$87.25. At the expiration of 20 years you can choose from the following options: First Option. Surrender policy and take your entire share of its earnings in cash, namely:

| | |
|---|---|
| Guaranteed reserve | $1,377.90 |
| Surplus | $1,766.17 |
| Total cash value | $3,144.07 |
| Total premiums paid to the company | $1,745.00 |
| Twenty years of life insurance and profit on investment | $1,399.07 |

"J. H. MOCKETT, JR., Agent."

The second and third options are not material in this case. According to plaintiff's evidence, Mockett promised that this paper would be sent to the home office of the company at Milwaukee with the application, and that the policy would contain the same when it was delivered to him. Plaintiff paid the first premium, and soon afterwards received the policy by mail from Mockett & Son. The estimate was attached with paste to the second page of the policy, and plaintiff supposed it had been attached at the home office. Shortly before the expiration of the 20-year period he notified the company at its home office that he elected to exercise the first option named in the "estimate" and take the cash value of $3,144.07 specified therein. In reply to this letter defendant stated that it knew nothing about any such option, and that the "estimate" had never

been signed or authorized by it or by any one for it. It offered to pay $1,377.09, the guaranteed reserve, and $790 surplus, with interest, amounting in all to $2,167.97. Plaintiff accepted this as a partial payment. . The policy provided: "This policy is issued on the semitontine plan, and its tontine dividend period is 20 years. This policy shall, if kept in force, share in the surplus, according to the company's usage, at each distribution after 20 years from the date hereof, until all contributions to the surplus found in the course of making such distributions to have arisen from this policy shall have been returned."

Among the conditions are the following:

"Eighth. No dividend shall be allowed or paid upon this policy, unless the insured shall survive the completion of its tontine dividend period, and unless this policy shall then be in force.

"Ninth. The condition last preceding being contained in all policies issued on the semitontine plan, all savings made in consequence of it shall be apportioned equitably among such policies issued on that plan as shall complete their tontine dividend periods."

It is also provided therein that upon completion of the tontine dividend period the insured shall have the options: "First, to withdraw in cash the accumulated surplus apportioned by the company to this policy; secondly, on furnishing satisfactory proof that the insured is then in good health, to apply said surplus to the purchase of a nonforfeitable participating paid-up addition to the amount insured under this policy; thirdly, 'to surrender this policy and receive therefor in cash its entire share of assets (that is, the accumulated reserve, together with the surplus apportioned), which reserve the company guarantees shall not be less than $1,377.90, in addition to said surplus."

On the back of the policy is printed: "Agents are not authorized to waive forfeitures, or to make, alter or discharge contracts."

In the answer defendant sets out certain provisions of the application limiting the authority of the agent, and alleges that the plaintiff at that time knew that the estimate executed by an agent was not and could not be a part of the policy. A number of other provisions of the policy are set out. It is also alleged that the estimate is inconsistent with the policy and does not refer to it; that the contract is a Wisconsin contract, and that under the law of that state such an estimate does not operate to change the terms of the policy as issued by the company or to guarantee or promise any other cash value than that already paid.

LETTON, J.

Both parties rely upon the law of Wisconsin. Plaintiff cites the case of *Timlin v. Equitable Life Assurance Society,* 141 Wis. 276. In this case the evidence established that the policy with the statement attached thereto was issued at the home office of the company. In the heading of the paper is found: ''These estimates are the authorized figures of the society.'' It was held under the evidence that the statement constituted a part of the contract; that the amount of the life annuity which was in controversy was definitely fixed in the statement, and that the company was liable for the amount thus specified. Defendant relies upon the case of *Tourtellotte v. New York Life Ins. Co.,* 155 Wis. 455. In this case the jury found that an unsigned statement inclosed with the policy, but not attached thereto, allowing certain options, the first of which was to withdraw the cash value of $8,160, was a part of the contract of insurance, and that plaintiff was entitled to withdraw this amount. The supreme court said: ''The question raised by the appeal is: Does the statement, exhibit 2, treating it as a part of the contract of insurance, change the policy so as to make it guarantee or promise a cash value of $8,160 at maturity? The trial court held that it did not. Was

such ruling correct? The statement purports to do nothing but illustrate or explain the contract. It contains no words of promise or guaranty." It is also said the statement in the *Timlin* case contained "words of promise as to the amount to be paid, while here we have language which purports only to illustrate the policy, and which states the source of the figures upon which the illustration is based." It was held that there was no liability by reason of this statement for more than the actual surplus and reserve. The opinion cites *Untermyer v. Mutual Life Ins. Co.*, 128 App. Div. (N. Y.) 615, *Langdon v. Northwestern Mutual Life Ins. Co.*, 199 N. Y. 188, and *Grange v. Penn Mutual Life Ins. Co.*, 235 Pa. St. 320, which support the conclusion reached. Of the two Wisconsin decisions, the facts in the *Tourtellotte* case are more nearly like the facts in this case. It is undisputed that the blank form of "estimate" was prepared and procured to be printed by J. H. Mockett & Son in conjunction with another agent of the company, and that no officer of the company was aware of its existence or use until plaintiff sought to exercise the option. There is testimony that the estimate was taken from a book issued by a private individual and sold to agents generally and used to the knowledge of the company by its soliciting agents, but there is no proof that the estimates shown in the book or set forth in the statement were not based on past experience, or that there was a wilful attempt to mislead and defraud. Plaintiff is a man of intelligence and education, and while he testifies that he was then not aware of the meaning of the word "tontine" or what the tontine plan of insurance was, we must conclude that he was aware of the meaning of the word "estimate," which is a word in common use. The statement is entitled "A Conservative Estimate of a Semitontine Policy." This is not the language of contract, but merely of expectation. The language used in the "estimate:" "At the expiration of 20 years you

can choose from the following options: First Option. Surrender policy and take your entire share of its earnings in cash, namely: Guaranteed reserve—$1,377.90. Surplus—$1,766.17''—shows that it was the amount of the reserve that was guaranteed, and not the amount of surplus. This of itself was significant. The policy stated the contract and the options which could be exercised under it. There was indorsed upon it a statement that agents had no power to make, alter, or discharge contracts. It provided in what manner the surplus which was to be divided at the end of 20 years should be accumulated, but made no attempt to specify its amount. Manifestly this would depend upon so many circumstances as to be impossible of accurate prediction. The number of policyholders in the tontine class, the number of lapses, the future condition of the money market which would determine the rate of interest which investments would draw were all uncertain factors. Legislation limiting forfeitures, increasing the rate of taxation, or changing the method of assessment, might reduce materially the funds which would otherwise fall into the surplus. The ''estimate'' fixes and liquidates matters which are left indefinite in the policy, and is so far inconsistent with its provisions.

The application shows that plaintiff affirmatively stated that he agreed and understood ''that no statements, representations or information made or given by or to the person soliciting or taking this application for a policy, or to any other person, shall be binding on the company, or in any manner affect its rights, unless such statements, representations or information be reduced to writing and presented to the officers of the company at the home office in this application.'' This was no doubt designed to avoid just such controversies. The desire of an agent for commissions may tempt him to make promises which his principal is unable or unwilling to fulfil, hence the necessity of such a provision. Only such statements

as have been brought to the company's attention in writing in the application are authorized by it, and can be relied upon. Ordinarily the acts of an agent within the scope of his authority will bind the principal; but, where there is an express limitation of this brought to the knowledge of the person dealing with the agent, no act of the agent beyond the limitation can bind the principal.

Life insurance is based upon mathematical principles. Its plans of insurance, and the rates and premium payments to be made are prepared by actuaries and based upon mortality experiences. The safety and permanence of such associations and the welfare of their policyholders demand that their contracts may not be held subject to be changed at will by a mere agent whose limited powers have been brought to the knowledge of the applicant.

Plaintiff has called to our attention the case of *Forman v. Mutual Life Ins. Co.,* 173 Ky. 547. The facts in that case are not the same as in this; but, even if identical, we are of the opinion that the cases cited by the Wisconsin court, *supra,* and the following cases from other jurisdictions are more to be preferred as persuasive authority. *Donoho v. Equitable Life Assurance Society,* 22 Tex. Civ. App. 192; *Truly v. Mutual Life Ins. Co.,* 108 Miss. 453 (this case distinguishes a former case in that state cited by plaintiff); *O'Brien v. Equitable Life Assurance Society,* 173 Mich. 432; *Williams v. New York Life Ins. Co.,* 122 Md. 141.

If the evidence had established that the estimates were not based upon former experiences, were beyond reason and fraudulent, and that the insurance company had knowledge of the use of such false and fraudulent estimates by their agents, then the law would afford an appropriate remedy to one injured or defrauded. As the case stands, the judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.

HAMER, J., concurring.

I concur in the conclusion. I do not think that the policy sued on justifies a conclusion that the paper entitled "A Conservative Estimate of a Semitontine Policy" was a part of the policy itself. The paper probably seemed to Kaley to have come from the home office, but it was signed, J. H. Mockett, Jr., Agent. It did not purport to be more than an estimate. It contained no words of promise, but it was a most artfully drawn estimate of the advantages likely to come to the insured. I have no doubt that the paper was very influential upon Kaley. It may have appeared to Kaley that the company put out the "estimate" and "authorized" the figures. The question is not before us to determine whether the company by its agent did Kaley a wrong for which it might be liable in tort, and therefore I do not wish to be understood as saying that an action in tort against the company will lie.