MARTELL, Appellant, v. NATIONAL GUARDIAN LIFE INSURANCE COMPANY, Respondent.

*March 2—March 30, 1965.*

For the appellant there were briefs by *Robert P. Stebbins* and *Kaftan, Kaftan & Kaftan,* all of Green Bay, and oral argument by *Mr. Stebbins.*

For the respondent there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *George E. Bills.*

HALLOWS, J. It is contended by the plaintiff the specimen value sheet is a part of the contract of insurance, relying on *Timlin v. Equitable Life Assur. Society* (1910), 141 Wis. 276, 124 N. W. 253. In many respects *Timlin* is like this case. There, two sheets of paper pinned together were delivered to the policyholder and were held to constitute the insurance contract. Their contents had been the subject of negotiation and while the delivery of the two pinned-together sheets was not conclusive, that fact taken with other circumstances of the transaction had a material and significant bearing on the question of what the parties intended as their contract. *Timlin* is not necessarily controlling on what the parties in the case at bar intended to be their contract. Intention is factual, not a question of law.

On August 17, 1928, after some negotiation the plaintiff made an application through Stewart Smith, an agent of the defendant at Green Bay, for two $5,000 life insurance policies. The application was accepted and policies dated August 20th were sent to the agent Smith for delivery. Smith delivered the policies, collected the premiums, and receipted the policies. The plaintiff testified the policies were enclosed in separate envelopes and without examining them he put them in a dresser drawer. About a year later when the second premiums became due he removed the policies and saw for the first time the specimen value sheet which was folded and attached by a paper clip to one of the policies.

Over the objection of the defendant the plaintiff testified the agent in selling the policy had told him that if he left the dividends with the company to accumulate, the life insurance policy would mature as an endowment when he reached age sixty-five. The plaintiff in his application elected to leave his dividends to accumulate with the company. Plaintiff also testified he knew the dividends of the life insurance company varied from year-to-year. The agent testified he had used the specimen value sheet, which was dated some seven days

prior to the application, in selling the policy to the plaintiff and was sure he did not attach it to the policy or deliver it with the policy. He also testified he qualified the statement that the accumulated dividends would mature the policy at age sixty-five by stating this would occur only if the company continued to pay the same rate of dividends as existed at that time.

The sheet in question (Exhibit 5) is partly printed as a form and partly typewritten. The printed part designates it as a "Specimen Value Sheet" and has five columns in which data may be put covering twenty years. The sheet is customarily used in making the net cost (not considering interest on the net premiums) and savings argument in selling life insurance. Typewritten data was inserted under the printed columns entitled "Dividend," "Premium Less Dividend," and the "Cash or Loan Value" for a twenty-year period. Age thirty-four is used with an initial premium of $108.44 for a $5,000 policy. For the twenty-year period dividends of $663.41, cash value of $1,460, premiums less dividends of $1,505.39, and a net outlay for protection of $45.39 are shown. This typewritten statement also appears on the sheet:

"Dividends left with Co. will provide Policy paid up for Life age 57—23 Years
"Policy matures as Endowment age 66—32 Years."

The sheet is dated August 10, 1928, has the defendant's name printed on it, the agent's sticker attached, and bears the agent's signature.

Each policy provided the attached application and the policy constituted the entire contract between the parties. The printed part of the policy also provided that, "No receipt for a premium, nor permit, nor alteration or discharge of this policy, nor change in the written or printed form of this policy, nor waiver of the terms of this policy or of for-

feiture under the same shall be valid unless signed by the President, Secretary or Treasurer of the Company, whose authority in this respect cannot be delegated." The receipt for the first premium printed on the policy provided, "Agents have no authority to modify, alter or change this policy nor to extend the time for premium payments." The policy instead of providing specifically for maturing at age sixty-six provided in paragraph 3 that, "Whenever the cash value of this policy with any accumulated dividends credited, and the cash value of any paid-up additions hereto, shall equal the full amount of this policy, then, . . . the Company will pay to the Insured or assigns the face of the policy as a matured endowment."

The trial court was of the opinion that the oral testimony of the plaintiff concerning the statements of the agent and Exhibit 5 could not be considered under the parol-evidence rule. The alleged oral statements of the agent of the effect of accumulating dividends is no part of the contract. Exhibit 5, the specimen value sheet, is not so easily ruled out under the parol-evidence rule since it might be considered a contemporaneous document. *Bank of Sheboygan v. Fessler* (1935), 218 Wis. 244, 260 N. W. 441; *Seaman v. McNamara* (1923), 180 Wis. 609, 193 N. W. 377.

Assuming the specimen value sheet was clipped to one of the policies at the time of delivery as the plaintiff's version has it, we do not find sufficient credible evidence that the parties intended it to be a part of their contract. The specimen value sheet was not issued by the home office of the defendant and was not on the policy when received by Smith, the agent. Unlike *Timlin,* we construe the language "this policy" to include and refer only to the printed policy issued at the home office. Under this interpretation, the printed policy plus the application by its terms constitute the entire contract between the parties. Any contemporaneous

document to be a part of the contract would require thereon the signature of the president, secretary, or treasurer. Here, we have but one specimen value sheet for two policies attached to one only by a paper clip, bearing a date of ten days prior to the date of the printed policy and not signed by a designated officer of the defendant.

If, as is customary in fire insurance, the agent had authority to issue these policies for the defendant and did issue them and had attached the specimen value sheet to the policy, a much better case for the plaintiff would have been made. But here, the specimen value sheet and the printed policy considering them contemporaneous documents are incompatible and no internal reference in the printed policy is made to or incorporates the specimen value sheet and likewise no language of incorporation appears in the specimen value sheet. The paper clip hardly performs that function as a matter of law. In addition, the specimen value sheet in effect contradicts the terms of the printed policy. It is argued the specimen value sheet merely particularizes the general language of when the policy matures as an endowment, but this argument assumes the "specimen" is a guaranty. Even if the specimen value sheet were considered a part of the contract, the plaintiff would not be entitled to recovery of the face amount because the language of the specimen value sheet is not promissory in nature but illustrative. It is true in *Timlin,* language somewhat different as to future values was construed to be promissory in reference to a semitontine policy, and the court found the parties contracted for the specified amount designated as "guaranteed legal reserves" and "the guaranteed surplus is estimated at." A few years after *Timlin* this court decided *Tourtellotte v. New York Life Ins. Co.* (1914), 155 Wis. 455, 144 N. W. 1117, relied on by the trial court. In that case the court, distinguishing *Timlin,* construed a separate document treated as a part of

the contract of insurance to be only illustrative and explanatory of other parts of the contract and not promissory. In the instant case the sheet plainly states it is a specimen value sheet. No promissory language is to be implied. The data of future values is not guaranteed but illustrates on the basis of assumed facts. The plaintiff knew dividends would vary from year to year. While some courts have held that a document illustrative and not promissory in nature is not part of the insurance contract although contemporaneous, we do not hold such fact to be determinative of intention. An illustration may be part of a contract, although promises are more likely to be.

Language in an insurance policy connoting expectancy or illustrative on assumed conditions or facts will not support recovery. 2 Couch, Insurance (2d ed.), p. 203, sec. 4:43; *O'Brien v. Equitable Life Assur. Society* (1912), 173 Mich. 432, 138 N. W. 1086; *Williams v. New York Life Ins. Co.* (1913), 122 Md. 141, 89 Atl. 97; and *Untermyer v. Mutual Life Ins. Co.* (1908), 128 App. Div. 615, 113 N. Y. Supp. 221. On the problem of incorporating separate documents as part of an insurance contract, see Annos. 22 A. L. R. 1284, and 128 A. L. R. 1034.

*By the Court.*—Judgment affirmed.